**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In re: | : |
| | :    Chapter 11 |
| Morris Brown College, | : |
| | :    Case No. 12-71188-BEM |
| Debtor. | : |
| | : |

## DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION DATED DECEMBER 21, 2014

      Debtor Morris Brown College hereby submits its Second Amended Chapter 11 Plan of Reorganization dated as of December 21, 2014.

Dated:    Atlanta, Georgia
         December 21, 2014

/s/  John A. Moore
John A. Moore (Ga. Bar No. 519792)
The Moore Law Group, LLC
1745 Martin Luther King Jr., Dr.
Atlanta, GA 30314
Telephone: (678) 288-5600
Facsimile: (888) 553-0071

*Local Counsel for Debtor and Debtor in Possession*

Dated:   Philadelphia, Pennsylvania
        December 21, 2014

/s/  Anne M. Aaronson
DILWORTH PAXSON LLP
Anne M. Aaronson (Pa. Bar No. 82118)
Catherine G. Pappas (Pa. Bar No. 206910)
1500 Market St., Suite 3500E
Philadelphia, PA 19102
Telephone: (215) 575-7000
Facsimile: (215) 575-7200

*Lead Counsel for Debtor and Debtor in Possession*

1

117249682_9

Table of Contents

Page No.

ARTICLE I. DEFINITIONS, INTERPRETATION, AND EXHIBITS..........................................1
    Section 1.01.      Definitions.................................................................................1
    Section 1.02.      Rules of Interpretation .........................................................10
    Section 1.03.      Exhibits ................................................................................10

ARTICLE II. CLASSIFICATION OF CLAIMS ............................................................10
    Section 2.01.      Generally..............................................................................10
    Section 2.02.      Unclassified Claims .............................................................10
    Section 2.03.      Unimpaired Classes .............................................................10
    Section 2.04.      Impaired Classes Entitled to Vote .......................................11

ARTICLE III. PROVISIONS FOR TREATMENT OF CLASSES OF CLAIMS ........................11
    Section 3.01.      Satisfaction of Claims ..........................................................11
    Section 3.02.      Unclassified Claims, Classified Unimpaired and Impaired
                          Claims ..................................................................................11
    Section 3.03.      Administrative Claims ..........................................................11
    Section 3.04.      Priority Tax Claims ..............................................................12
    Section 3.05.      Class 1: Priority Claims .......................................................12
    Section 3.06.      Class 2: Claims of AME .......................................................12
    Section 3.07.      Class 3: Secured Claim of the United States Department of
                          Education and Covenant of the Atlanta Economic Development
                          Authority ..............................................................................14
    Section 3.08.      Class 4: Fieri Facias Lien of Commerce and Industry Insurance
                          Company ...............................................................................14
    Section 3.12.      Class 5: Mechanic's Lien and Judgment of Commercial
                          Plumbing, Inc. .....................................................................14
    Section 3.13.      Class 6: Mechanic's Lien and Judgment of Premier Contract
                          Carpet ..................................................................................14
    Section 3.14.      Class 7:  General Unsecured Claims.....................................14

ARTICLE IV. ACCEPTANCE OR REJECTION OF THE PLAN; CRAMDOWN ....................15
    Section 4.01.      Acceptance by Impaired Classes of Claims..........................15
    Section 4.02.      Voting Classes ......................................................................15
    Section 4.03.      Ballot Instructions................................................................15
    Section 4.04.      Cramdown ............................................................................15

ARTICLE V. PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN ...............16
    Section 5.01.      Timing of Distributions........................................................16
    Section 5.02.      Distributions to Holders of Allowed Claims.........................16
    Section 5.03.      Distribution Account.............................................................16
    Section 5.04.      Delivery of Distributions ......................................................17
    Section 5.05.      Method of Cash Distributions...............................................17
    Section 5.06.      Failure to Negotiate Checks.................................................17

Section 5.07.    Unclaimed Distributions ........................................................17
Section 5.08.    Fractional Dollars...................................................................18
Section 5.09.    Compliance With Tax Requirements .......................................18

ARTICLE VI. EXECUTORY CONTRACTS AND UNEXPIRED LEASES;
            INDEMNIFICATION OBLIGATIONS; BENEFIT PROGRAMS .....................18
Section 6.01.    Rejection of Executory Contracts and Unexpired Leases....................18
Section 6.02.    Schedules of Executory Contracts and Unexpired Leases....................18
Section 6.03.    Categories of Executory Contracts and Unexpired Leases to be
                 Assumed...............................................................................19
Section 6.04.    Other Categories of Agreements and Policies. ......................20
Section 6.05.    Assumption and Rejection Procedures and Resolution of
                 Treatment Objections. ...........................................................21
Section 6.06.    Approval of Assumption or Rejection of Executory Contracts
                 and Unexpired Leases. ..........................................................22
Section 6.07.    Modifications, Amendments, Supplements, Restatements or
                 Other Agreements. ................................................................23

ARTICLE VII. MEANS FOR IMPLEMENTATION OF THE PLAN ...........................23
Section 7.01.    Continued Existence. ............................................................23
Section 7.02.    Restructuring Transactions....................................................23

ARTICLE VIII. PRESERVATION OF CAUSES OF ACTION AND RIGHT TO
            DEFEND AND CONTEST ...............................................................24
Section 8.01.    Preservation of Rights...........................................................24
Section 8.02.    Setoffs..................................................................................24
Section 8.03.    No Payment or Distribution Pending Allowance...................24
Section 8.04.    Resolution of Disputed Claims ..............................................24

ARTICLE IX. CONDITIONS TO CONSUMMATION OF THE PLAN ...........................25
Section 9.01.    Conditions to Confirmation ..................................................25
Section 9.02.    Conditions to Effectiveness ..................................................25
Section 9.03.    Waiver of Conditions to Effectiveness...................................25

ARTICLE X. EFFECTS OF CONFIRMATION ...............................................26
Section 10.01.   Vesting of Assets ..................................................................26
Section 10.02.   Injunction ............................................................................26
Section 10.03.   Releases................................................................................27
Section 10.04.   Term of Injunctions or Stays ................................................30
Section 10.05.   Preservation of Clark Atlanta University Interests ...............30
Section 10.06.   Preservation of Insurance.....................................................30
Section 10.07.   Subordination Rights ............................................................30
Section 10.08.   No Successor Liability ..........................................................31

ARTICLE XI. RETENTION OF JURISDICTION ...............................................31
Section 11.01.   Exclusive Jurisdiction of Bankruptcy Court........................31

- ii -

ARTICLE XII. MISCELLANEOUS PROVISIONS ....................31
Section 12.01. Binding Effect of Plan ....................31
Section 12.02. Business Days ....................31
Section 12.03. Severability ....................32
Section 12.04. Governing Law ....................32
Section 12.05. Post-Effective Date Status of the Committee ....................32
Section 12.06. Oversight Committee ....................32
Section 12.07. Payment of Statutory Fees ....................33
Section 12.08. Post-Confirmation Operating Reports ....................33
Section 12.09. Notices ....................33
Section 12.10. Section 1146 Exemption ....................33
Section 12.11. Continued Confidentiality Obligations ....................34
Section 12.12. No Admissions or Waivers ....................34
Section 12.13. Entire Agreement ....................34
Section 12.14. Bar Date for Professionals ....................34

## INTRODUCTION

This second amended chapter 11 plan of reorganization (as may be amended or modified hereafter in accordance with its terms, the "Plan"), dated as of December 21, 2014, is proposed by Morris Brown College ("MBC," the "Debtor" or the "Plan Proponent").  Reference is made to the Second Amended Disclosure Statement, filed on December 21, 2014, accompanying the Plan for a discussion of the Debtor's history, business, results of operations, historical financial information, properties, projections for future operations and risk factors, a summary and analysis of the Plan, and certain related matters.

SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019 AND THE PLAN, THE PLAN PROPONENT RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.

Capitalized terms used herein shall have the meanings set forth in Article I hereof.  Claims against the Debtor (other than Administrative Claims and Priority Tax Claims) are classified in Article II hereof and treated in Article III hereof.  No person nor entity holds an Interest (as defined by the Bankruptcy Code) in the Debtor; therefore, all Classes contained in this Plan include only Claims against the Debtor.

## ARTICLE I.
## DEFINITIONS, INTERPRETATION, AND EXHIBITS.

Section 1.01.        Definitions

Unless the context requires otherwise, the following terms shall have the following meanings whether presented in the Plan or the Disclosure Statement with initial capital letters or otherwise.  As used herein:

"Administrative Claim" means a Claim filed by the Administrative Claim Bar Date for: (a) any cost or expense of administration (including, without limitation, the Professional Fee Claims filed by the Professional Fee Bar Date) of the Chapter 11 Case asserted or arising under sections 503, 507(a)(1), 507(b) or 1114(e)(2) of the Bankruptcy Code including, but not limited to (i) any actual and necessary post Petition Date cost or expense of preserving the Debtor's Estate or operating the Debtor, (ii) any post Petition Date cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in the ordinary course of its operations (excluding all debtor-in-possession funding provided to the Debtor by AME and approved by the Bankruptcy Court and utilized by the Debtor pursuant to one or more Interim DIP Orders and/or a Final DIP Order, which amounts are being paid pursuant to section 3.06 hereof), (iii) compensation or reimbursement of expenses of Professionals to the extent Allowed by the Bankruptcy Court under sections 330(a) or 331 of the Bankruptcy Code, and (iv) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under section 546 of the Bankruptcy Code; and (b) any fees or charges assessed against the Debtor's Estate under section 1930 of title 28 of the United States Code.

"Administrative Claim Bar Date" means the date that is thirty days from the date on which the notice of Effective Date of the Plan is mailed to creditors and parties in interest.

"Allowed" means, with reference to any Claim, (a) any Claim against the Debtor that has been listed by the Debtor in the Schedules, as such Schedules may have been amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not Disputed or contingent, and with respect to which no contrary Proof of Claim has been filed, (b) any Claim specifically allowed under the Plan, (c) any Claim the amount or existence of which has been determined or allowed by a Final Order, or (d) any Claim as to which a Proof of Claim has been timely filed before the Bar Date, *provided* that at the time of the Effective Date the Claim has not identified as being objectionable in part or in whole and no Objection to the allowance thereof has been filed by the Claims Objection Deadline; *provided, however*, that the term Allowed, with reference to any Claim, shall not include (x) any unliquidated Claim or (y) interest or attorneys' fees on or related to any Claim that accrues from and after the Petition Date unless otherwise expressly provided for in the Plan.

"AME" means The African Methodist Episcopal Church, Inc.

"Assumption Effective Date" means the date upon which the assumption of an executory contract or unexpired lease under this Plan is deemed effective.

"Assumption Party" means a counterparty to an executory contract or unexpired lease to be assumed and/or assigned by the Debtor under this Plan.

"Avoidance Actions" means any and all Causes of Action which a trustee, debtor in possession, the Estate or other appropriate party in interest may assert under sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code (other than those which are released or dismissed as part of and pursuant to the Plan) or under other similar or related state or federal statutes or common law, including fraudulent conveyance laws.  In consultation with the Committee and AME, upon review of the Debtor's books and records and other relevant information, the Debtor determined that recoveries from Avoidance Actions would be di minimus and elected not to pursue such actions.

"Ballot" means the ballots, substantially similar to the forms accompanying the Disclosure Statement as such forms shall be subsequently amended by the Plan Proponent, upon which Holders of Impaired Claims entitled to vote on the Plan shall indicate their acceptance or rejection of the Plan.

"Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as in effect on the Petition Date, together with all amendments and modifications thereto that subsequently may be made applicable to the Chapter 11 Case.

"Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Georgia.

"Bankruptcy Rules" means: (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under section 2075 of title 28 of

117249682_9

the United States Code; (b) the Federal Rules of Civil Procedure, as amended and promulgated under section 2072 of title 28 of the United States Code; (c) any local rules applicable to the Bankruptcy Court; and (d) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Chapter 11 Case or proceedings therein, as the case may be.

"Bar Date" means the applicable bar date by which a Proof of Claim must be, or must have been, filed, as established by an order of the Bankruptcy Court.

"Board" shall mean the members of the Board of Trustees of the Debtor, as may be appointed and may resign from time to time.

"Business Day" means any day which is not a Saturday, a Sunday, a "legal holiday" as defined in Bankruptcy Rule 9006(a), or a day on which banking institutions in the State of Georgia are authorized or obligated by law, executive order or governmental decree to be closed.

"Carve Out" means the Sale Proceeds in excess of $11,500,000 (which $11,500,000 represents $10,500,000 being paid to Class 2 and $1,000,000 being paid to Class 3 under the Plan), in which AME holds an interest as a secured creditor, which AME consents to allocate toward the distribution on account of allowed Administrative Claims (including professional fees), Priority Tax Claims, and Claims in Classes 1, and 4 through 7, in the amounts allocated to such Claims in the Plan.  It is estimated that this amount totals approximately $2,290,000.

"Causes of Action" means any and all actions, Claims, rights, defenses, third-party claims, damages, executions, demands, crossclaims, counterclaims, suits, choses in action, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, Disputed, undisputed, secured or unsecured and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, accruing to the Debtor.

"Chapter 11 Case" means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court on the Petition Date.

"Claim" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

"Claims Objection Deadline" means the latest of:  (a) 120 days after the Effective Date; or (b) such other date as may be fixed by the Bankruptcy Court.

"Class" means each class, subclass or category of Claims as classified in Article II of the Plan.

"Committee" means the official committee of unsecured creditors appointed in the Debtor's Chapter 11 Case pursuant to section 1102(a) of the Bankruptcy Code by the United

- 3 -

States Trustee, as the membership of such committee is from time to time constituted and reconstituted.

"Confirmation" means the entry by the Bankruptcy Court of the Confirmation Order.

"Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court with respect to the Chapter 11 Case within the meaning of Bankruptcy Rules 5003 and 9021.

"Confirmation Hearing" means the hearing held before the Bankruptcy Court to consider Confirmation of the Plan pursuant to sections 1128 and 1129 of the Bankruptcy Code.

"Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code and, with respect to distributions and other terms pertaining to the debt owed by the Debtor to AME, in form and substance satisfactory to AME.

"Creditor" means any Person or Entity that is the Holder of any Claim against the Debtor.

"Cure" means a distribution made in the ordinary course of business following the Effective Date pursuant to an executory contract or unexpired lease assumed under section 365 or 1123 of the Bankruptcy Code (i) in an amount equal to the Proposed Cure or (ii) if a Treatment Objection is filed with respect to the applicable Proposed Cure, then in an amount equal to the unpaid monetary obligations owing to the Debtor as may be (x) determined by Final Order or (y) otherwise agreed upon by the parties.

"Debtor" shall have the meaning set forth in the Introduction.

"DIP Credit Agreement" shall mean the agreement between the Debtor and AME executed in connection with the Interim DIP Orders and the Final DIP Order.

"Disallowed" means, with respect to any Claim or portion thereof, any Claim against the Debtor which: (a) has been withdrawn, in whole or in part, by the Holder thereof; or (b) has been disallowed, in whole or part, by Final Order of the Bankruptcy Court.  In each case a Disallowed Claim is disallowed only to the extent of disallowance or withdrawal.

"Disclosure Statement" means the Debtor's Disclosure Statement with respect to the Amended Chapter 11 Plan filed on December 21, 2014, including all exhibits, appendices, schedules and annexes, if any, attached thereto, as the same may be altered, amended, supplemented or modified from time to time.

"Disputed" means any Claim that has been neither Allowed nor Disallowed and is subject to a pending objection filed on or before the date of the Confirmation Hearing.

- 4 -

"Distributable Cash" means any operating cash of the Debtor, including the Sale Proceeds, gifts and other donations solicited to fund distributions provided in the Plan as well as the Residual, to be deposited into the Distribution Account.

"Distribution Account" means an account maintained by the Distribution Agent into which Distributable Cash will be delivered, and the proceeds therefrom will be distributed in accordance with the Plan.

"Distribution Agent" means such Entity or Entities, including the Debtor, that may be designated by the Debtor to make distributions in accordance with the Plan.

"Effective Date" means the later of the first Business Day following the date on which all conditions to consummation set forth in Article IX of the Plan have been satisfied or waived (if capable of being duly and expressly waived), *provided that* no stay of the Confirmation Order is then in effect.

"Entity" means any individual, corporation, limited or general partnership, joint venture, association, joint stock company, limited liability company, estate, trustee, United States Trustee, unincorporated organization, government, governmental unit (as defined in the Bankruptcy Code), agency or political subdivision thereof.

"Estate" means the estate created in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code upon commencement of the Chapter 11 Case.

"Exculpated Persons" means to the maximum extent permitted by the Bankruptcy Code and applicable law: (a) the Debtor; (b) the Committee; and (c) as to the parties listed in (a) and (b), any of their respective members, trustees, officers, employees, advisors, attorneys or agents acting in such capacity on or after the Petition Date.

"Final Decree" means the final decree entered by the Bankruptcy Court after the Effective Date and pursuant to section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022.

"Final DIP Order" means a Final Order of the Bankruptcy Court, or other court of competent jurisdiction, granting the Motion of Morris Brown College for Entry of an Order: (i) Authorizing it to Obtain Post-Petition Financing Pursuant to Sections 363 and 364 of the Bankruptcy Code; (ii) Authorizing it to Enter Into the Debtor-in-Possession Credit and Security Agreement; (iii) Granting Liens and Super-Priority Claims to DIP Lender Pursuant to Section 364 of Bankruptcy Code; and (iv) Modifying the Automatic Stay to Implement the Terms of the DIP Order.

"Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket of such court, the operation or effect of which has not been stayed, reversed, vacated, modified or amended, and as to which order or judgment (or any revision, modification, or amendment thereof) of the time to appeal, petition for certiorari, or seek review or rehearing has expired and as to which no appeal, petition for certiorari, or petition for review or rehearing was filed or, if filed, remains pending; *provided*, *however*, that the possibility that a motion may be filed pursuant to Rules 9023 or 9024 of the

Bankruptcy Rules or Rules 59 or 60(b) of the Federal Rules of Civil Procedure shall not mean that an order or judgment is not a Final Order.

"General Unsecured Claims" means all Claims, including Rejection Claims, that are not Administrative Claims, Priority Tax Claims, or Claims designated in Classes 1 through 6.

"Holder" means an Entity holding a beneficial interest in a Claim.

"Impaired" means, when used with reference to a Claim, a Claim that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"Indenture Trustee" means U.S. Bank, National Association.

"Insurance Plans" means the Debtor's insurance policies and any agreements, documents or instruments relating thereto entered into prior to or subsequent to the Petition Date.

"Interim DIP Order(s)" means all orders entered by the Bankruptcy Court, or other court of competent jurisdiction, which on an interim basis, grant the Motion of Morris Brown College for Entry of an Order (I) Authorizing Morris Brown College to Obtain Secured Post-Petition Financing Pursuant to Sections 363 and 364 of the Bankruptcy Code; (II) Authorizing Morris Brown College to Enter into the Debtor-in-Possession Credit and Security Agreement; (III) Granting Liens and Super-Priority Claims to DIP Lender Pursuant to Section 364 of Bankruptcy Code; (IV) Granting Adequate Protection Pursuant to Sections 361, 363(e) and 364(d) of Bankruptcy Code; (V) Modifying the Automatic Stay to Implement the Terms of this Order and (VI) Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001(b), including but not limited to those entered by the Bankruptcy Court on August 29, 2013 and on September 23, 2013.

"Liens" means, with respect to any asset or Property (or the rents, revenues, income, profits or proceeds therefrom), any and all mortgages, liens, covenants, pledges, attachments, charges, leases evidencing a capitalizable lease obligation, conditional sale or other title retention agreement, or other security interest or encumbrance or other legally cognizable security devices of any kind.

"MBC" shall have the meaning set forth in the Introduction.

"Notice of Effective Date" means a notice delivered by the Debtor to all creditors and parties in interest upon the Effective Date of the Plan which shall also include a Notice of Administrative Claim Bar Date.

"Notice of Intent to Assume or Reject" means a notice delivered by the Debtor pursuant to Article VI of the Plan stating an intent to assume or reject an executory contract or unexpired lease and including a proposed Assumption Effective Date or Rejection Effective Date, as applicable, and, if applicable, a Proposed Cure and/or a proposed amendment.

"Objection" means any objection, application, motion, complaint or any other legal proceeding seeking, in whole or in part, to Disallow, determine, liquidate, classify, reclassify or establish the priority, expunge, subordinate or estimate any Claim (including the

resolution of any request for payment of any Administrative Claim) other than a Claim that is Allowed.

"Oversight Committee" means the committee appointed pursuant to section 12.06 of this Plan.

"Person" means and includes a natural person, individual, partnership, corporation and other entities as defined in section 101(a) of the Bankruptcy Code.

"Petition Date" means August 25, 2012.

"Plan" means Debtor's Chapter 11 Plan of Reorganization dated as of June 27, 2013, as amended by the First Amended Chapter 11 Plan of Reorganization dated as of November 6, 2013, and further amended by this Second Amended Chapter 11 Plan of Reorganization dated as of December 21, 2014, including all exhibits, appendices, schedules and annexes, if any, attached hereto, as submitted by the Plan Proponent, as such Plan may be further altered, amended, supplemented or modified from time to time.

"Plan Documents" means, collectively, the Disclosure Statement, the Plan, the Plan Support Agreement, the Confirmation Order, any exhibit to the Plan or any other Plan document.

"Plan Proponent" shall have the meaning set forth in the Introduction.

"Plan Support Agreement" shall mean that Plan Support Agreement by and among the Committee, AME, U.S. Bank, National Association, as Indenture Trustee, and the Debtor dated as of December 21, 2014 and filed simultaneously with the Plan.

"Priority Claims" means any Claim against the Debtor entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

"Priority Tax Claim" means any and all Claims accorded priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

"Professional Fee Claim" means an Allowed Claim for compensation and/or reimbursement of expenses pursuant to sections 327, 328, 330, 331 or 503(b) of the Bankruptcy Code relating to services incurred on and after the Petition Date and prior to and including the Effective Date in connection with an application by the Professionals in the Chapter 11 Case made to and approved by the Bankruptcy Court.

"Professionals" means any professional employed in the Chapter 11 Case pursuant to sections 327 or 1103 of the Bankruptcy Code or any Professional entitled to compensation pursuant to sections 327, 328, 330, 331, 503(b)(2) or (4), or 1103 of the Bankruptcy Code.

"Proof of Claim" means a proof of claim filed against the Debtor in the Chapter 11 Case.

- 7 -

"Property" means all assets or property of the Debtor's Estate of any nature whatsoever, real or personal, tangible or intangible, including contract rights, accounts and Causes of Action, previously or now owned by the Debtor, or acquired by the Debtor's Estate, as defined in section 541 of the Bankruptcy Code.

"Proposed Cure" means, with respect to a particular executory contract or unexpired lease, the consideration that the Debtor proposes (which may be zero or some amount greater than zero) as full satisfaction of the Debtor's post-due and then-current outstanding obligations with respect to such executory contract or unexpired lease, but which does not include obligations that may come due in the future with regard to such executor contract or unexpired lease.

"Rejection Bar Date" means the earlier of (a) the date set by the Bankruptcy Court for the filing of a Rejection Claim or (b) thirty days from the date on which the relevant executory contract or unexpired lease is effectively rejected by the Debtor.

"Rejection Claim" means the Claim of any non-Debtor counterparty to any unexpired lease or any executory contract that has been rejected by the Debtor in the Chapter 11 Case or pursuant to the Plan arising as a result of such rejection.

"Rejection Effective Date" means (a) the date on which a Final Order is entered with respect to the rejection of an executory contract or unexpired lease, or (b) the date upon which the rejection of an executory contract or unexpired lease under this Plan is deemed effective.

"Rejection Party" means a counterparty to an executory contract or unexpired lease to be rejected by the Debtor under this Plan or during the administration of the Debtor's Chapter 11 Case.

"Residual" means that portion of the Carve Out remaining after distribution on account of allowed Administrative Claims, Priority Tax Claims, and Claims in Classes 1, and 4 through 6.  The Debtor estimates that the Residual will be approximately $300,000.

"Restructuring Transactions" means the transactions described in Article VII of the Plan, which are necessary to fund the distributions on account of Claims as set forth in the Plan.

"Sale Proceeds" means the proceeds from the sale of property conducted pursuant to 11 U.S.C. § 363(b), approved by order of the bankruptcy court dated June 23, 2014, as supplemented.

"Schedules" means the schedules of assets and liabilities and statements of financial affairs filed by the Debtor in the Chapter 11 Case, as the same may have been or may be amended, modified or supplemented.

"Secured Claim" means any Claim arising before the Petition Date that is: (a) secured in whole or part, as of the Petition Date, by a Lien which is valid, perfected and enforceable under applicable law on Property in which the Debtor's Estate's has an interest and

- 8 -

is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law; or (b) subject to setoff under section 553 of the Bankruptcy Code, but, with respect to both case (a) and (b), only to the extent of the value of the assets or Property securing any such Claim or the amount subject to setoff, as the case may be.

"Tax" means any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign governmental authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, *ad valorem*, estimated, severance, stamp, occupation and withholding tax, together with any interest, penalties, fines or additions attributable to, imposed on, or collected by any such federal, state, local or foreign governmental authority.

"Treatment Objection" means an objection to the Debtor's proposed assumption or rejection of an executory contract or unexpired lease pursuant to the provisions of this Plan that is properly filed with the Bankruptcy Court and served by the applicable Treatment Objection Deadline.

"Treatment Objection Deadline" means the deadline for filing and serving a Treatment Objection, which is (i) with respect to an executory contract or unexpired lease listed on Schedule 6.02(a) or 6.02(b), the 21st calendar day after the relevant Schedule is filed and notice thereof is mailed, (ii) with respect to an executory contract or unexpired lease the proposed treatment of which has been altered by an amended or supplemental Schedule 6.02(a) or 6.02(b), the 14th calendar day after such amended or supplemental schedule is filed and notice thereof is mailed, (iii) with respect to an executory contract or unexpired lease for which a Notice of Intent to Assume or Reject is filed, the 21st calendar day after such notice is filed and notice thereof is mailed and (iv) with respect to any other executory contract or unexpired lease, including any to be assumed or rejected by category pursuant to Sections 6.01, 6.03 or 6.04 of the Plan, the deadline for objections to Confirmation of the Plan.

"Unclaimed Property" means any distribution of cash or any other Property made to the Holder of an Allowed Claim pursuant to the Plan that is returned to the Debtor or the Distribution Agent as undeliverable and no appropriate forwarding address is received prior to the date on which the Final Decree is entered in the Chapter 11 Case, in the case of a distribution made in the form of a check, is not negotiated and no request for reissuance is made as provided for in Section 5.06 of the Plan.

"Unimpaired" means any Claim that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

"United States Trustee" means the United States Trustee appointed under section 581(a)(3) of title 28 of the United States Code to serve in the Northern District of Georgia.

"U.S. Trustee's Fee Claims" means any fees assessed against the Debtor's Estate pursuant to section 1930(a)(6) of title 28 of the United States Code.

"Voting Agent" means Dilworth Paxson LLP.

- 9 -

"Voting Deadline" means the date and time that shall be set by the Bankruptcy Court for the submission of ballots voting in favor of or against the Plan.

<div align="center">Section 1.02.          <u>Rules of Interpretation</u></div>

All references to "the Plan" herein shall include this document and all its exhibits, appendices, schedules and annexes, if any (and any amendments thereto).  The captions and headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  Any term used in the Plan that is not defined in the Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules (with the Bankruptcy Code controlling in the case of a conflict or ambiguity). In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) and Section 12.15 hereof shall apply, but Bankruptcy Rule 9006(a) shall govern.

<div align="center">Section 1.03.          <u>Exhibits</u></div>

All Exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full herein, regardless of when filed.

<div align="center">

**ARTICLE II.**
**CLASSIFICATION OF CLAIMS**

</div>

<div align="center">Section 2.01.          <u>Generally</u></div>

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims.  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of the Class.  No Interests (as defined by the Bankruptcy Code) are held in the Debtor.  Accordingly, all Classes pertain to Claims held against the Debtor.  A Claim is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, settled or otherwise satisfied prior to the Effective Date.

<div align="center">Section 2.02.          <u>Unclassified Claims</u></div>

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not classified and are excluded from the Classes designated in this Article II of the Plan. The treatment accorded Administrative Claims and Priority Tax Claims is set forth in Article III of the Plan.

<div align="center">Section 2.03.          <u>Unimpaired Classes</u></div>

The Plan classifies the following Unimpaired Claims that are not entitled to vote on the Plan.  Pursuant to section 1126(f) of the Bankruptcy Code, each Holder of a Claim in the following Class is conclusively presumed to have accepted the Plan in respect of such Claims and is not entitled to vote to accept or reject the Plan:

Class 1 shall consist of Priority Claims other than Priority Tax Claims.

<div align="center">- 10 -</div>

Section 2.04.        <u>Impaired Classes Entitled to Vote</u>

The Plan classifies the following Classes as the only Impaired Classes that may receive a distribution under the Plan and that are entitled to vote to accept or reject the Plan:

Class 2 shall consist of the Claims and other interests currently held by AME, including amounts provided to the Debtor pursuant to the DIP Credit Agreement.

Class 3 shall consist of the Secured Claim of the U.S. Department of Education and the Covenant of the Atlanta Economic Development Authority.

Class 4 shall consist the Fieri Facias Lien of Commerce and Industry Insurance Company.

Class 5 shall consist of the Mechanic's Liens and Judgment of Commercial Plumbing.

Class 6 shall consist of the Fieri Facias Lien of Premier Contract Carpet.

Class 7 shall consist of the General Unsecured Claims other than the Unclassified Claims and Claims in Classes 1 through 6.

## ARTICLE III.
## PROVISIONS FOR TREATMENT OF CLASSES OF CLAIMS

Section 3.01.        <u>Satisfaction of Claims</u>

The treatment of and consideration to be received by Holders of Allowed Claims pursuant to this Article III and the Plan shall be in full satisfaction, settlement, release, extinguishment and discharge of their respective Claims against the Debtor and the Debtor's Estate, except as otherwise provided in the Plan or the Confirmation Order.

Section 3.02.        <u>Unclassified Claims, Classified Unimpaired and Impaired Claims</u>

Administrative Claims and Priority Tax Claims of the Debtor are treated in accordance with section 1129(a)(9)(A) and section 1129(a)(9)(C) of the Bankruptcy Code, respectively. Such Claims are Unimpaired under the Plan and, in accordance with section 1123(a)(1) of the Bankruptcy Code, are not designated as Classes of Claims for purposes of this Plan and for purposes of sections 1123, 1124, 1126 and 1129 of the Bankruptcy Code. In addition, Class 1 Claims are classified as Classes of Claims that are Unimpaired. In accordance with section 1126(f) of the Bankruptcy Code, the Holders of Claims in such Class are conclusively presumed to have accepted the Plan and are not entitled to vote to accept or reject the Plan. Claims in Classes 2 through 7 are Impaired and the Holders thereof are entitled to vote to accept or reject the Plan on account of such Allowed Claims.

Section 3.03.        <u>Administrative Claims</u>

Administrative Claims are Unimpaired. Unless otherwise provided for herein, each Holder of an Allowed Administrative Claim, excluding the debtor-in-possession financing (to the extent approved by the Bankruptcy Court) shall receive, from the Carve Out, in full satisfaction, settlement, release, extinguishment and discharge of such Claim: (a) the amount of such unpaid Allowed Administrative Claim on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Administrative Claim becomes Allowed, or (iii) a date agreed to in writing by the Debtor and the Holder of such Administrative Claim; or (b) such other treatment on such other terms and conditions as may be agreed upon in writing by the Holder of such Administrative Claim and the Debtor, or as the Bankruptcy Court may order. Notice of the Administrative Claim Bar Date shall be included in the Notice of Effective Date sent to each creditor and party in interest upon the Effective Date of the Plan. For the avoidance of doubt, all amounts drawn by the Debtor pursuant to one or more Interim DIP Orders and/or a Final DIP Order and all fees, expenses and other amounts chargeable to the Debtor under the DIP Credit Agreement shall be paid pursuant to section 3.06 below. By agreement, all professionals (with the exception of JLL, Inc.) appointed in the Chapter 11 Case have agreed to accept reduction of up to 20% of the total allowed amount of their respective fees and expenses, plus a reduction of up to 20% of the total of their future fees and expenses for purposes of the distribution of the Sale Proceeds to priority and general unsecured creditors, as set forth in the Plan.

Section 3.04.    Priority Tax Claims

Priority Tax Claims are Unimpaired. Each Holder of an Allowed Priority Tax Claim shall receive, from the Carve Out and at the option of the Debtor, in full satisfaction, settlement, release, extinguishment and discharge of such Priority Tax Claim: (a) the amount of such unpaid Allowed Priority Tax Claim on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Priority Tax Claim becomes Allowed, and (iii) a date agreed to by the Debtor and the Holder of such Priority Tax Claim; or (b) such other treatment on such other terms and conditions as may be agreed upon in writing by the Holder of such Priority Tax Claim and the Debtor or as the Bankruptcy Court may order. Prior to the Effective Date, the Plan Proponent shall have the right to prepay at any time, in whole or in part, any Allowed Priority Tax Claim without premium or penalty of any sort or nature.

Section 3.05.    Class 1:    Priority Claims

Class 1 Priority Claims are Unimpaired. Each Holder of an Allowed Class 1 Priority Claim shall receive from the Carve Out in full satisfaction, settlement, release, extinguishment and discharge of such Claim: (a) the amount of such unpaid Allowed Class 1 Priority Claim on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Class 1 Priority Claim becomes Allowed, and (iii) a date agreed to by the Plan Proponent and the Holder of such Class 1 Priority Claim; or (b) such other treatment on such other terms and conditions as may be agreed upon in writing by the Holder of such Class 1 Priority Claim and the Debtor.

Section 3.06.    Class 2:    Claims of AME

- 12 -

Class 2 Claims are Impaired. The Holder of a Class 2 Claim shall have an Allowed Secured Claim in the amount of $18,100,000 (the "Class 2 Allowed Claim Amount") and shall be secured by a properly perfected, first priority lien on and security interest in all property of the Reorganized Debtor by virtue of such liens existing prior to the Petition Date. The Holder of a Class 2 Claim, on behalf of itself as well as its agents, Indenture Trustees, affiliates, successors, predecessors and assigns, shall receive from the Sale Proceeds, a total of $10,500,000 on or before the Effective Date of the Plan toward the satisfaction of the Debtor's obligations to AME and the Indenture Trustee on: the prepetition secured debt owed to the Holder of the Class 2 Claim and to its Indenture Trustee; the satisfaction of the debtor-in-possession financing advanced by the Holder of the Class 2 Claim; and the debt acquired by the Holder of a Class 2 Claim pursuant to the settlement agreement approved by the Bankruptcy Court on November 4, 2013. The Holder of a Class 2 Claim shall provide the Carve Out so that distributions may be made from the Sale Proceeds to fund distributions to Allowed unclassified claims and Holders of Allowed Claims in Class 1 and Classes 4 through 7, pursuant to the Plan.

Notwithstanding anything to the contrary herein, in addition to the cash distribution to the Holder of a Class 2 Claim provided under the Plan, AME and the Indenture Trustee will retain their security interest in the campus property that was not sold pursuant to 11 U.S.C. § 363(b), unaffected by the Debtor's bankruptcy case. This "carried interest" shall be in the amount of $3,500,000 and shall secure a portion of the Debtor's remaining obligation to the Holder of a Class 2 Claim. The obligation shall be further evidenced by a Secured Promissory Note that provides that no principal or interest will become due until the earlier of 2.5 years post-emergence or 6 months following accreditation (the "Forbearance Period"). Unless voluntarily paid earlier by the Debtor, payment of interest that accrues during the Forbearance Period ("Accrued Interest") shall commence on the 1st day of the month following the end of the Forbearance Period (the "First Interest Payment Date") and shall be amortized over a period commencing with the First Interest Payment Date and ending 120 months after the date the note is executed and delivered (the " Maturity Date") of the Note. Interest will accrue at the federal judgment rate of interest or 7.375% per annum, whichever is higher.

The Debtor shall retire this carried interest and obtain a release of the interest by, beginning no later than the earlier of 2.5 years post-emergence or 6 months following accreditation, making an annual payment to AME equal to 25% of the Debtor's excess revenues over expenditures for each year until such time as amounts due under the Secured Promissory Note are repaid in full.

Alternatively, the Debtor may pay off the Secured Promissory Note by:

(a) within thirty six months of the effective date of the Plan, paying a lump sum of $1,000,000 or the then outstanding amount due under the Secured Promissory Note (whichever is less), or

(b) within thirty six months of the effective date of the Plan selling the property securing the Secured Promissory Note, and providing AME with 50% of the net proceeds of such sale, after deducting costs of sale, surveys, broker fee, litigation and other costs, provided that the total payment is equal to or greater than $1,000,000 or the then outstanding balance due under the Secured Promissory Note (whichever is less), or

- 13 -

117249682_9

(c) within sixty months of the effective date of the Plan, paying a lump sum of $1,750,000, or the then outstanding balance due under the Secured Promissory Note (whichever is less), or

(d) within sixty months of the effective date of the Plan, selling the property securing the Secured Promissory Note, and providing AME with 50% of the net proceeds of such sale after deducting costs of sale, surveys, broker fee, litigation and other costs, provided that the total payment is equal to or greater than $1,750,000 or the then outstanding balance due under the Secured Promissory Note (whichever is less).

Section 3.07.    Class 3:    Secured Claim of the United States Department of Education and Covenant of the Atlanta Economic Development Authority

Class 3 Secured Claims are Impaired.   The Class 3 Secured Claims are secured by real property commonly known as the John Lewis Gymnasium.  By agreement between the Debtor and the Holders, the Holders of the Allowed Class 3 Secured Claim shall receive, in full satisfaction, settlement, release, extinguishment and discharge of such Class 3 Secured Claims and in exchange for a release of its liens, payment in the aggregate amount of $1,000,000, from the Sale Proceeds, without interest.

Section 3.08.    Class 4:    Fieri Facias Lien of Commerce and Industry Insurance Company

Class 4 Secured Claims are Impaired.  The Holder of an Allowed Class 4 Secured Claim shall receive from the Carve Out, in full satisfaction, settlement, release, extinguishment and discharge of such Class 4 Secured Claim and all Liens associated therewith, $1,000, as agreed upon by and between the Debtor and the Claimant as set forth in the settlement agreement attached hereto at Exhibit B.

Section 3.12.    Class 5:    Mechanic's    Lien    and    Judgment    of Commercial Plumbing, Inc.

Class 5 Secured Claims are Impaired.  The Holder of an Allowed Class 5 Secured Claim shall receive from the Carve Out, in full satisfaction, settlement, release, extinguishment and discharge of such Class 5 Secured Claim and all Liens associated therewith, $3,500, as agreed upon by and between the Debtor and the Claimant as set forth in the settlement agreement attached hereto at Exhibit B

Section 3.13.    Class 6:    Mechanic's Lien and Judgment of Premier Contract Carpet

Class 6 Secured Claims are Impaired.  The Holder of an Allowed Class 6 Secured Claim shall receive from the Carve Out, in full satisfaction, settlement, release, extinguishment and discharge of such Class 6 Secured Claim and all Liens associated therewith, $10,000, as agreed upon by and between the Debtor and the Claimant as set forth in the settlement agreement attached hereto at Exhibit B.

Section 3.14.    Class 7:  General Unsecured Claims

- 14 -

Class 7 General Unsecured Claims are Impaired. Class 7 General Unsecured Claims include all Claims, including Rejection Claims, that are not: Administrative Claims; Priority Tax Claims; or Claims designated in Classes 1 through 6. Each Holder of an Allowed Class 7 General Unsecured Claim shall receive, in full satisfaction, settlement, release, extinguishment and discharge of such Allowed Class 7 General Unsecured Claim its pro rata share of the Residual of the Carve Out and any remaining Distributable Cash on account of such Holder's Allowed Class 7 Allowed General Unsecured Claim.

## ARTICLE IV.
## ACCEPTANCE OR REJECTION OF THE PLAN; CRAMDOWN

Section 4.01.      Acceptance by Impaired Classes of Claims

Pursuant to section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if: (a) the Holders of at least two-thirds (2/3) in dollar amount of the Allowed Claims actually voting in such Class (other than Claims held by any Holder designated pursuant to section 1126(e) of the Bankruptcy Code) have timely and properly voted to accept the Plan, and (b) more than one-half (1/2) in number of the Holders of such Allowed Claims actually voting in such Class (other than Claims held by any Holder designated pursuant to section 1126(e) of the Bankruptcy Code) have timely and properly voted to accept the Plan. Holders of Disputed Claims that, if Allowed, would be included in a Class that is entitled to vote shall be entitled to vote and their claims shall be assigned the value of $1.00 for voting purposes only.

Section 4.02.      Voting Classes

Except as otherwise required by the Bankruptcy Code or the Bankruptcy Rules or as otherwise provided in this Section 4.02, the Holders of Claims in Classes 2 through 7 shall be entitled to vote to accept or reject the Plan in accordance with Section 4.01 of the Plan. Classes of Claims Unimpaired under the Plan (Class 1) shall not be entitled to vote to accept or reject the Plan, and shall be conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Administrative Claims and Priority Tax Claims are Unimpaired and not classified under the Plan and hence are not entitled to vote to accept or reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

Section 4.03.      Ballot Instructions

Each Holder of a Claim entitled to vote on the Plan will be asked to complete and return a Ballot to the Voting Agent, which will compile the votes so received. Any questions as to the validity, form, and eligibility (including time of receipt) of Ballots will be resolved by the Bankruptcy Court upon application or at the Confirmation Hearing.

Section 4.04.      Cramdown

If all applicable requirements for Confirmation of the Plan are met as set forth in section 1129(a)(1) through (13) of the Bankruptcy Code as applied to nonprofit entities and the Bankruptcy Court determines that subsection (8) thereof applies to the Debtor under the facts and circumstances of this Chapter 11 Case, the Plan Proponent may request that the Bankruptcy

- 15 -

Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code on the bases that the Plan is fair and equitable and does not discriminate unfairly with respect to each Class of Claims that is Impaired under, and has not accepted, the Plan.

## ARTICLE V.
## PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN

Section 5.01.    Timing of Distributions

Except as specifically set forth in the Plan, distributions of Property will be made to Holders of Allowed Claims in accordance with Article III of the Plan.  If a Claim is not an Allowed Claim as of the applicable distribution date, distributions will be made only if and when the Claim is Allowed, and then in accordance with Article III of the Plan and, with respect to the cure of defaults for assumed executory contracts and unexpired leases, Section 6.02 of the Plan, and in each case, subject to Article VIII of the Plan.  Distributions to be made as of the Effective Date on account of Claims that are Allowed as of the Effective Date and are entitled to receive distributions under the Plan shall be made on the Effective Date or as soon as reasonably practicable thereafter, but no later than ten (10) calendar days after the Effective Date. Distributions to be made after the Effective Date shall be made on dates to be established by the Distribution Agent pursuant to the terms of this Plan.  For Claims that are Disputed or have otherwise not yet been Allowed as of the Effective Date, the Distribution Agent shall reserve in the Distribution Account sufficient funds for distribution to the Holders of such Claims in the event that such Claims become Allowed, in full.   To the extent that funds remain in the Distribution Account from the Carve Out allocated to Class 7 after resolution of all Disputed Claims in Class 7, and distributions have been made on account of the Allowed Claims resulting therefrom, a subsequent distribution of such remaining Distributable Cash shall be made on dates to be established by the Distribution Agent pursuant to the terms of this Plan until such time as all Distributable Cash has been exhausted.

Section 5.02.    Distributions to Holders of Allowed Claims

Distributions to Holders of Allowed Claims will be made in accordance with Article III of the Plan.  On the Effective Date, the Debtor shall deliver the Distributable Cash to the Distribution Agent, who will deposit such Distributable Cash into the Distribution Account. From the Distribution Account, the Distribution Agent will make distributions in accordance with the Plan.  If any dispute arises as to the identity of a Holder of an Allowed Claim who is to receive any distribution, the Distribution Agent or the Debtor shall, as appropriate and in lieu of making such distribution to such Holder, delay such distribution until the disposition thereof shall be determined by Final Order of the Bankruptcy Court or by written agreement among the interested parties to such dispute.

Section 5.03.    Distribution Account

A Distribution Account shall be established by the Distribution Agent to receive the Distributable Cash necessary to fund the Plan.  On, or as soon as reasonably practicable after, the Effective Date the Distribution Agent shall make distributions from the Distribution Account

- 16 -

in accordance with the Plan.  The Distribution Account shall be extinguished following distribution of all Distributable Cash made therefrom in accordance with the Plan.

<div align="center">Section 5.04.      <u>Delivery of Distributions</u></div>

Distributions to Holders of Allowed Claims shall be made by the Distribution Agent: (a) at the address listed on the Holders proof of claim or at the last known addresses of the Holder if a proof of claim was not filed, or (b) at the addresses set forth in any written notices of address changes delivered to the Debtor or the Distribution Agent on or before the Effective Date.  If any Holder's distribution is returned as undeliverable, no further distributions to such Holder shall be made unless and until the Distribution Agent is notified of such Holder's then current address prior to the entry of the Final Decree, at which time all missed distributions shall be made to such Holder without interest.

<div align="center">Section 5.05.      <u>Method of Cash Distributions</u></div>

Any distribution to be made pursuant to the Plan may be made by draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law at the option of the Distribution Agent.

<div align="center">Section 5.06.      <u>Failure to Negotiate Checks</u></div>

Checks issued in respect of distributions under the Plan shall be null and void if not negotiated within ninety (90) days after the date of issuance.  Any amounts returned to the Debtor in respect of such non-negotiated checks shall be forwarded to and held by the Distribution Agent in the Distribution Account as Distributable Cash.  Requests for reissuance for any such check shall be made directly to the Distribution Agent by the Holder of the Allowed Claim.  All amounts represented by any voided check will be held until the earlier of: (a) one (1) month after date on which the check is voided, or (b) the date on which the Bankruptcy Court enters the Final Decree, and all requests for reissuance by the Holder of the Allowed Claim in respect of a voided check are required to be made prior to such date.  Thereafter, all such amounts shall be deemed to be Unclaimed Property, in accordance with Section 5.07 of the Plan, and all Holders of Claims in respect of void checks shall be forever barred, estopped and enjoined from asserting a claim to such funds in any manner against the Debtor or its assets, the Distribution Account, the Distributable Cash or the Distribution Agent.

<div align="center">Section 5.07.      <u>Unclaimed Distributions</u></div>

All Property distributed on account of Allowed Claims must be claimed prior to the date on which the Bankruptcy Court enters the Final Decree, or, in the case of a distribution made in the form of a check, must be negotiated  by such date or have a pending request for reissuance by such date as provided for in Section 5.06 of the Plan. All Unclaimed Property will be retained by the Distribution Agent in the Distribution Account as Distributable Cash until such time as the Final Decree is entered.  Upon entry of the Final Decree, any Unclaimed Property will be retained by and shall revert to the Reorganized Debtor.  All full or partial payments made by the Debtor and received by the Holder of an Allowed Claim prior to the Effective Date will be deemed to be payments under the Plan for purposes of satisfying the obligations of the Debtor or the Distribution Agent pursuant to the Plan.  Nothing contained in

<div align="center">- 17 -</div>

the Plan shall require the Debtor or the Distribution Agent to attempt to locate any Holder of an Allowed Claim other than by reviewing the records of the Debtor and any Claims filed in the Chapter 11 Case.  Pursuant to section 1143 of the Bankruptcy Code, all Claims in respect of Unclaimed Property shall be deemed Disallowed and the Holder of any Claim Disallowed in accordance with this Section 5.07 will be forever barred, expunged, estopped and enjoined from asserting such Claim in any manner against the Debtor or the Distribution Agent, or their respective assets.

Section 5.08.      Fractional Dollars

Notwithstanding any other provision of the Plan, distributions of fractions of dollars will not be made; rather, whenever any payment of a fraction of a dollar would be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.

Section 5.09.      Compliance With Tax Requirements

In connection with each distribution with respect to which the filing of an information return (such as an Internal Revenue Service Form 1099 or 1042) or withholding is required, the Debtor or the Distribution Agent, as appropriate, shall file such information return with the Internal Revenue Service and provide any required statements in connection therewith to the recipients of such distribution or effect any such withholding and deposit all moneys so withheld as required by law.  With respect to any Person from whom a tax identification number, certified tax identification number or other tax information required by law to avoid withholding has not been received by the Debtor or the Distribution Agent within thirty (30) days from the date of such request, the Debtor or the Distribution Agent, at its option, may withhold the amount required and distribute the balance to such Person or decline to make such distribution until the information is received.

## ARTICLE VI.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES; INDEMNIFICATION OBLIGATIONS; BENEFIT PROGRAMS

Section 6.01.      Rejection of Executory Contracts and Unexpired Leases.

Pursuant to sections 365 and 1123 of the Bankruptcy Code, except as otherwise set forth in this Article VI, each executory contract and unexpired lease to which the Debtor is a party shall be deemed automatically rejected by the Debtor effective as of the Effective Date, except for any executory contract or unexpired lease (i) that has been assumed pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, (ii) that is the subject of a motion to assume pending on the Effective Date, (iii) that is assumed, rejected or otherwise treated pursuant to Section 6.03 or Section 6.04 of the Plan, (iv) that is listed on Schedule 6.02(a) of the Plan, or (v) as to which a Treatment Objection has been filed and properly served by the Treatment Objection Deadline.

Section 6.02.      Schedules of Executory Contracts and Unexpired Leases.

- 18 -

(a)      Schedule 6.02(a) of this Plan shall represent the Debtor's good faith belief regarding the intended treatment of all executory contracts and unexpired leases listed thereon. The Debtor reserves the right, on or prior to 3:00 p.m. (prevailing Eastern time) on the third Business Day immediately prior to the commencement of the Confirmation Hearing, (i) to amend Schedule 6.02(a) in order to add, delete or reclassify any executory contract or unexpired lease or amend a proposed assignment and (ii) to amend the Proposed Cure, in each case with respect to any executory contract or unexpired lease previously listed as to be assumed. Pursuant to sections 365 and 1123 of the Bankruptcy Code, and except with respect to executory contracts and unexpired leases as to which a Treatment Objection is properly filed and served by the Treatment Objection Deadline, each of the executory contracts and unexpired leases listed on Schedule 6.02(a) shall be deemed assumed effective as of the Assumption Effective Date specified thereon and the Proposed Cure specified in the notice mailed to each Assumption Party shall be the Cure and shall be deemed to satisfy fully any obligations the Debtor might have with respect to such executory contract or unexpired lease under section 365(b) of the Bankruptcy Code.  Any party in interest may object or respond to any Treatment Objection.

(b)      The Debtor shall file an initial version of Schedules 6.02(a) and any amendments thereto with the Bankruptcy Court and shall serve all notices thereof only on the relevant Assumption Parties and Rejection Parties, as well as the Committee.

(c)      The listing of any contract or lease on Schedule 6.02(a) is not an admission that such contract or lease is an executory contract or unexpired lease.

(d)      Any Proposed Cure, or any amount owed as set forth in a Final Order on any Treatment Objection, shall not be satisfied out of the Distribution Account or the Distributable Cash, but rather, shall be satisfied only by other assets of the Debtor.

Section 6.03.      Categories of Executory Contracts and Unexpired Leases to be Assumed.

Pursuant to sections 365 and 1123 of the Bankruptcy Code, each of the executory contracts and unexpired leases within the following categories shall be deemed assumed as of the Effective Date (and the Proposed Cure with respect to each shall be zero dollars), except for any executory contract or unexpired lease (i) that is the subject of a motion to assume or reject pending on the Confirmation Date, (ii) that is otherwise expressly assumed or rejected pursuant to the terms of this Plan, or (iii) as to which a Treatment Objection has been filed and properly served by the Treatment Objection Deadline.

(a)      Insurance Plans and Workers' Compensation Plans.

Subject to the terms of the first paragraph of this Section 6.03, each Insurance Plan and Workers' Compensation Plan shall be deemed assumed effective as of the Effective Date.

(b)      Certain Indemnification Obligations.

- 19 -

Each Indemnification Obligation to a trustee, officer or employee that was employed by the Debtor in such capacity on or after the Petition Date shall be deemed assumed effective as of the Effective Date (and the Proposed Cure with respect to each shall be zero dollars); *provided, however*, that any Indemnification Obligation contained in an Employee Agreement that is rejected pursuant to Sections 6.01, 6.02 or 6.04 shall also be deemed rejected. Each Indemnification Obligation that is deemed assumed pursuant to the Plan shall (i) remain in full force and effect, (ii) not be modified, reduced, discharged, impaired or otherwise affected in any way, (iii) be deemed and treated as an executory contract pursuant to sections 365 and 1123 of the Bankruptcy Code regardless of whether or not Proofs of Claim have been filed with respect to such obligation and (iv) survive Unimpaired and unaffected irrespective of whether such indemnification is owed for an act or event occurring before or after the Petition Date.

       (c)      <u>Certain Lease Agreements</u>.

Subject to the terms of the first paragraph of this Section 6.03, any leases or subleases between the Debtor, as landlord or lessor, and a third party, as tenant or lessee, for the use of any of the Debtor's facilities shall be deemed assumed. Nothing contained in this Section 6.03(c) shall constitute or be deemed a waiver of any defense or Cause of Action that the Debtor may hold against any individual or entity, including, without limitation, any counterparty to a lease or sublease agreement.

       Section 6.04.      <u>Other Categories of Agreements and Policies</u>.

       (a)      <u>Employee Agreements</u>.

Pursuant to sections 365 and 1123 of the Bankruptcy Code, each Employee Agreement entered into by the Debtor and any person employed by the Debtor on the Effective Date who accepts distributions pursuant to the Plan which shall be deemed made in full Cure and satisfaction of all outstanding obligations owed to such person, shall be deemed assumed effective as of the Effective Date, except for any Employee Agreement (i) that has been assumed or rejected pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, (ii) that is the subject of a motion to assume or reject pending on the Confirmation Date, (iii) that is listed on Schedule 6.02(a) or 6.02(b) of the Plan, (iv) that is otherwise expressly assumed or rejected pursuant to the terms of the Plan, or (v) as to which a Treatment Objection has been filed and properly served by the Treatment Objection Deadline.

       (b)      <u>Employee Benefits</u>.

As of the Effective Date, whether or not such employee benefits are provided for in an Employee Agreement that has been rejected in this Chapter 11 Case (by operation of this Plan or otherwise), the Debtor, in its sole and absolute discretion, may honor, in the ordinary course of business, the Debtor's written contracts, agreements, policies, programs and plans for, among other things, compensation, health care benefits, disability benefits, severance benefits, retirement benefits, welfare benefits, life insurance and accidental death and dismemberment insurance, including written contracts, agreements, policies, programs and plans for bonuses and other incentives or compensation for the officers and employees of the Debtor who served in such capacity at any time. To the extent that the above-listed contracts, agreements, policies,

programs and plans are executory contracts, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless a Treatment Objection is timely filed and properly served, each of them will be deemed assumed (as modified or terminated) as of the Effective Date with a Cure of zero dollars. However, notwithstanding anything else herein, at the discretion of the Debtor, the assumed plans shall be subject to modification in accordance with the terms thereof.

Section 6.05.    Assumption and Rejection Procedures and Resolution of Treatment Objections.

(a)    Proposed Assumptions.

(i)    With respect to any executory contract or unexpired lease to be assumed pursuant to any provision of this Plan or any Notice of Intent to Assume or Reject, unless an Assumption Party timely files and properly serves a Treatment Objection by the Treatment Objection Deadline, such executory contract or unexpired lease shall be deemed assumed as of the Assumption Effective Date proposed by the Debtor, without any further notice to or action by the Bankruptcy Court, and any obligation the Debtor may have to such Assumption Party with respect to such executory contract or unexpired lease under section 365(b) of the Bankruptcy Code shall be deemed fully satisfied by the Proposed Cure, if any, which shall be the Cure.

(ii)    Any objection to the assumption of an executory contract or unexpired lease that is not timely filed and properly served shall be denied automatically and with prejudice (without the need for any objection by the Debtor and without any further notice to or action, order or approval by the Bankruptcy Court), and any Claim relating to such assumption shall be forever barred from assertion and shall not be enforceable against the Debtor or its Estate or properties without the need for any objection by the Debtor and without any further notice to or action, order or approval by the Bankruptcy Court, and any obligation the Debtor may have under section 365(b) of the Bankruptcy Code (over and above any Proposed Cure) shall be deemed fully satisfied, released and discharged, notwithstanding any amount or information included in the Schedules or any Proof of Claim.

(b)    Proposed Rejections.

(i)    With respect to any executory contract or unexpired lease to be rejected pursuant to any provision of this Plan or any Notice of Intent to Assume or Reject, unless a Rejection Party files and properly serves a Treatment Objection by the Treatment Objection Deadline, such executory contract or unexpired lease shall be deemed rejected as of the Rejection Effective Date proposed by the Debtor without any further notice to or action by the Bankruptcy Court.

(ii)    Any objection to the rejection of an executory contract or unexpired lease that is not timely filed and properly served shall be deemed denied automatically and with prejudice (without the need for any objection by the Debtor and without any further notice to or action, order or approval by the Bankruptcy Court).

(c)    Resolution of Treatment Objections.

- 21 -

(i)    Both on and after the Effective Date, the Debtor may settle Treatment Objections, subject to approval by the Bankruptcy Court.

(ii)    With respect to each executory contract or unexpired lease as to which a Treatment Objection is timely filed and properly served, the Debtor, subject to approval by the Bankruptcy Court, shall attempt to negotiate a resolution of such Treatment Objection and, should such efforts fail, schedule a hearing on such Treatment Objection and provide at least 14 calendar days' notice of such hearing to the relevant Assumption Party or Rejection Party.    Unless the Bankruptcy Court expressly orders or the parties agree otherwise, any assumption or rejection approved by the Bankruptcy Court notwithstanding a Treatment Objection shall be effective as of the Assumption Effective Date or Rejection Effective Date originally proposed by the Debtor or specified in the Plan.

(iii)    Any Cure shall be paid as soon as reasonably practicable following the entry of a Final Order resolving an assumption dispute and/or approving an assumption, unless the Debtor files a Notice of Intent to Assume or Reject.

(iv)    No Cure shall be allowed for a penalty rate or default rate of interest, each to the extent not proper under the Bankruptcy Code or applicable law.

(d)    <u>Reservation of Rights</u>.

If a Treatment Objection is filed with respect to any executory contract or unexpired lease sought to be assumed or rejected by the Debtor, any party in interest may to object to such Treatment Objection; (ii) the Debtor may seek to assume or reject such agreement at any time before the assumption, rejection, assignment or Cure with respect to such agreement is determined by Final Order, and (iii) to the extent a Final Order is entered resolving a dispute as to Cure or the permissibility of assignment (but not approving the assumption of the executory contract or unexpired lease sought to be assumed), the Debtor may seek to reject such agreement within 14 calendar days after the date of such Final Order, in each case by filing with the Bankruptcy Court and serving upon the applicable Assumption Party or Rejection Party, as the case may be, a Notice of Intent to Assume or Reject.

Section 6.06.    <u>Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases</u>.

(a)    Entry of the Confirmation Order by the Bankruptcy Court shall, subject to the occurrence of the Effective Date, constitute approval of the rejections and assumptions contemplated by this Plan pursuant to sections 365 and 1123 of the Bankruptcy Code.    Each executory contract and unexpired lease that is assumed pursuant to the Plan shall vest in and be fully enforceable by the Debtor in accordance with its terms as of the applicable Assumption Effective Date, except as modified by the provisions of this Plan, any order of the Bankruptcy Court authorizing or providing for its assumption or applicable federal law.

(b)    The provisions (if any) of each executory contract or unexpired lease assumed pursuant to the Plan that are or may be in default shall be deemed satisfied in full by the Cure, or by an agreed-upon waiver of the Cure.

- 22 -

Section 6.07.    Modifications, Amendments, Supplements, Restatements or Other Agreements.

Unless otherwise provided by this Plan or by separate order of the Bankruptcy Court, each executory contract and unexpired lease that is assumed, whether or not such executory contract or unexpired lease relates to the use, acquisition or occupancy of real property, shall include (i) all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such executory contract or unexpired lease and (ii) all executory contracts or unexpired leases appurtenant to the premises, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements and any other interests in real estate or rights in remedy related to such premises, unless any of the foregoing agreements has been or is rejected pursuant to an order of the Bankruptcy Court or is otherwise rejected as part of the Plan.

Modifications, amendments, supplements and restatements to pre-petition executory contracts and unexpired leases that have been executed by the Debtor during the Chapter 11 Case and actions taken in accordance therewith (i) do not alter in any way the pre-petition nature of the executory contracts and unexpired leases, or the validity, priority or amount of any Claims against the Debtor that may arise under the same, (ii) are not and do not create postpetition contracts or leases, (iii) do not elevate to administrative expense priority any Claims of the counterparties to the executory contracts and unexpired leases against the Debtor and (iv) do not entitle any entity to a Claim under any section of the Bankruptcy Code on account of the difference between the terms of any pre-petition executory contracts or unexpired leases and subsequent modifications, amendments, supplements or restatements.

## ARTICLE VII.
## MEANS FOR IMPLEMENTATION OF THE PLAN

Section 7.01.    Continued Existence.

Except as otherwise provided in the Plan, the Debtor shall, as a Reorganized Debtor, continue to exist after the Effective Date as a legal entity, with all the powers of a nonprofit corporation under the laws of the State of Georgia and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under Georgia law. Following the Effective Date, the Board of Trustees, as its membership shall change from time to time, shall remain the governing body of the Reorganized Debtor and, subject to the approval of and replacement by such Board, Dr. Stanley Pritchett, Jr. will continue to serve as President of the Reorganized Debtor, Lucius Williams will continue to serve as Chief Financial Officer of the Reorganized Debtor, and Robert Johnson will continue to serve as Chief Operations Officer of the Reorganized Debtor.

Section 7.02.    Restructuring Transactions.

On or as of the Effective Date, the distributions provided for under the Plan shall be effectuated through the distribution of the Sale Proceeds, including the Carve Out, and under the Secured Promissory Note from the Reorganized Debtor's assets.

- 23 -

117249682_9

## ARTICLE VIII.
## PRESERVATION OF CAUSES OF ACTION AND
## RIGHT TO DEFEND AND CONTEST

Section 8.01.        <u>Preservation of Rights</u>

Except to the extent that any Claim is Allowed during the Chapter 11 Case or expressly by this Plan, the Confirmation Order, or other order of the Bankruptcy Court, nothing, including, but not limited to, the failure of the Debtor or the Distribution Agent to object to a Claim for any reason during the pendency of the Chapter 11 Case, shall affect, prejudice, diminish or impair the rights and legal and equitable defenses of the Debtor or the Distribution Agent, with respect to any Claim, including, but not limited to, all rights of the Debtor or the Distribution Agent to contest or defend themselves against such Claims in any lawful manner or forum when and if such Claim is sought to be enforced by the Holder thereof.

Section 8.02.        <u>Setoffs</u>

The Debtor or the Distribution Agent, as applicable, may, but shall not be required to, set off against any Claims and the payments or distributions to be made pursuant to the Plan in respect of such Claims, any and all debts, liabilities, Causes of Action and Claims of every type and nature whatsoever which the Estate, the Debtor or the Distribution Agent may have against such Creditors, but neither the failure to do so nor the allowance of any such Claims, whether pursuant to the Plan or otherwise, shall constitute a waiver or release by the Debtor or the Distribution Agent of any such Claims or Causes of Action the Debtor or the Distribution Agent may have against such Creditors.

Section 8.03.        <u>No Payment or Distribution Pending Allowance</u>

All references to Claims and amounts of Claims refer to the amount of the Claim Allowed by agreement of the Debtor or the Distribution Agent and the Holder of such Claim, by operation of law, by Final Order, or by this Plan.  Notwithstanding any other provision in the Plan, no payment or distribution shall be made on account of or with respect to any Claim to the extent it is a Disputed Claim unless and until the Disputed Claim becomes an Allowed Claim.

Section 8.04.        <u>Resolution of Disputed Claims</u>

Unless otherwise ordered by the Court after notice and a hearing, the Debtor, in consultation with the Committee or the Oversight Committee, as applicable, shall file Objections to Claims (except those specifically Allowed by this Plan) and shall serve a copy of each such objection upon the Holder of the Claim to which the Objection is made as soon as practicable, but in no event later than the Claims Objection Deadline.  The foregoing deadline may be extended by order of the Court. An Objection to any Claim shall be deemed properly served on the Holder thereof if the Debtor effects service in any of the following manners:  (a) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Federal Rule of Bankruptcy Procedure 7004; (b) by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified in the Proof of Claim or any attachment thereto; or (c) by first class mail, postage prepaid, on any counsel that has appeared on the Holder's behalf in the Chapter 11 Case.  Pending allowance or disallowance,

the Debtor shall reserve, in the Distribution Account, amounts necessary to pay Disputed Claims pursuant to the Plan.

## ARTICLE IX.
## CONDITIONS TO CONSUMMATION OF THE PLAN

Section 9.01.    Conditions to Confirmation

The following are conditions precedent to Confirmation of the Plan that must be satisfied or waived in accordance with Section 9.03 of the Plan:

(a)    The Bankruptcy Court shall have entered a Confirmation Order that is consistent with the terms of the Plan and Plan Support Agreement.

Section 9.02.    Conditions to Effectiveness

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Section 9.03 of the Plan:

(a)    The Confirmation Order, in form and substance acceptable to the Debtor and, with respect to distributions and other terms pertaining to the debt owed by the Debtor to AME and the Indenture Trustee, in form and substance satisfactory to AME and the Indenture Trustee, shall have been entered and become a Final Order; and

(b)    All actions, documents and agreements necessary to implement the Plan shall have been effected or executed as determined by the Debtor in consultation with the Committee, the Indenture Trustee and AME.

Section 9.03.    Waiver of Conditions to Effectiveness

The Debtor, for itself and its Estate, may waive any of the conditions set forth in Section 9.02 hereof at any time, only with the express written consent of the Committee, the Indenture Trustee and AME, but without any notice to any other parties-in-interest or the Bankruptcy Court and without any formal action other than proceeding to consummate the Plan. The failure to satisfy any condition prior to the Confirmation Date or the Effective Date may be asserted by the Debtor, in its sole and absolute discretion (with written notice to the Committee, the Indenture Trustee and to AME), as a reason not to seek Confirmation or declare an Effective Date, regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtor, in its sole discretion). The failure of the Debtor, in its sole discretion, to exercise any of the foregoing rights shall not be deemed a waiver of any other rights and each such right shall be deemed an ongoing right, which may be asserted at any time.

117249682_9

## ARTICLE X.
## EFFECTS OF CONFIRMATION

Section 10.01.     <u>Vesting of Assets</u>

Upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all Property of the Debtor, shall vest in the Reorganized Debtor, free and clear of all Claims, Liens, encumbrances, charges and other interests, except as otherwise specifically provided in the Plan, including Section 10.05's preservation of the reversionary interest asserted by Clark Atlanta University, to the same extent and validity as such interest existed prior to the Effective Date, in certain parcels of the Debtor's real property.  All Liens, Claims, encumbrances, charges and other interests shall be deemed fully released and discharged as of the Effective Date, except as otherwise provided in the Plan.  As of the Effective Date, the Reorganized Debtor may operate its organization and may use, acquire and dispose of Property without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, other than as required by the Plan.

Section 10.02.     **<u>Injunction</u>**

(a)     **<u>Discharged Claims</u>**.

**Pursuant to section 1141(d) the Bankruptcy Code, Confirmation and, where applicable, receipt by creditors of payment provided under the Plan, will discharge Claims against the Debtor.  No Holder of a Claim against the Debtor may, on account of such Claim, seek or receive any payment or other distribution from, or seek recourse against, the Debtor or its property, except as expressly provided herein.  Accordingly, except as otherwise provided herein, the Confirmation Order shall provide, among other things, that no Holder of a Claim against the Debtor may, on account of such Claim, seek or receive any payment or other distribution from, or seek recourse against, the Debtor or its property, except that from and after the Confirmation Date, all Persons who have held, hold, or may hold Claims against the Debtor are permanently enjoined from taking any of the following actions against the Debtor, or its property on account of such Claims:  (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance; and (iv) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained herein shall preclude such Persons or Entities from exercising their rights pursuant to and consistent with the terms of the Plan.  Notwithstanding anything to the contrary in the Plan, creditors' rights of setoff and recoupment are preserved, and the injunctions referenced in this section or Section 10.03 of the Plan shall not enjoin the valid exercise of such rights of setoff and recoupment.  By accepting distributions pursuant to the Plan, each Holder of an Allowed Claim shall be deemed to have specifically consented to the injunctions set forth in this Section 10.02.**

(b)     **<u>Exculpation and Limitation of Liability</u>**.

- 26 -

**To the maximum extent permitted by the Bankruptcy Code and applicable law, neither the Distribution Agent nor any Exculpated Person shall have or incur any liability to any Person or Entity, including, without limitation, any Holder of a Claim or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or affiliates or any of their successors or assigns, for any act taken or omission made in connection with, relating to, or arising out of, the Chapter 11 Case, filing, negotiating, prosecuting, administering, formulating, implementing, soliciting support or acceptance of, confirming or consummating this Plan or the Property to be distributed under this Plan, including all activities leading to the promulgation and Confirmation of the Plan, the Disclosure Statement (including any information provided or statement made in the Disclosure Statement or omitted therefrom), or any contract, instrument, release or other agreement or document created in connection with or related to the Plan or the administration of the Debtor or this Chapter 11 Case, *provided, however*, that the foregoing exculpation shall not apply to any act of gross negligence or willful misconduct.  Nothing in the Plan or the Confirmation Order shall release any Person or Entity, other than the Debtor, from any environmental liability towards a State or Federal Governmental Unit incurred as a result of said Person's or Entity's ownership or operation of real property after Confirmation; however, Exculpated Persons shall be released from all other environmental liabilities arising prior to Confirmation.**

Section 10.03.    **Releases**

(a)    **Releases by Debtor**.

(i)    **Release of Committee.  Effective as of the Effective Date, and except as otherwise provided in the Plan or the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor, in its individual capacity and as debtor in possession, will be deemed to have forever released, waived and discharged the Committee and its members and representatives from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities (other than the rights of the Debtor or the Distribution Agent to enforce the Plan and the contracts, instruments, releases, indentures and other agreements or documents delivered thereunder), whether for tort, contract, violations of federal or state securities laws, or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence, including actions in connection with indebtedness for money borrowed by the Debtor, taking place on or after the Petition Date and on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 Case, or the Plan.**

- 27 -

(ii)  **Release of AME and Indenture Trustee. Effective as of the Effective Date, and all provisions of the Plan notwithstanding other than with respect to any act of gross negligence or willful misconduct, in consideration for the debtor-in-possession financing and as may be approved pursuant to Rule 9019 of the Bankruptcy Code in this Bankruptcy Case, and the Carve Out, Debtor, in its individual capacity, as debtor in possession, and on behalf of the Estate, will be deemed to have forever released, waived and discharged AME and the Indenture Trustee, their affiliates, agents, attorneys, managers, members, representatives, officers, directors, current and past employees, successors, transferees and assigns, from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities (other than the rights of the Debtor or the Distribution Agent to enforce the Plan and the contracts, instruments, releases, indentures and other agreements or documents delivered thereunder), whether for tort, contract, violations of federal or state securities laws, or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence, including actions in connection with indebtedness for money borrowed by the Debtor both pre- and post-petition, taking place on or prior to the Effective Date in any way relating to the Debtor, its Estate, the Chapter 11 Case, or the Plan.**

(b)  **Releases by Holders of Claims.**

(i)  **Release of Debtor. Effective as of the Effective Date, and except as otherwise provided in the Plan or the Confirmation Order, in consideration for the obligations of the Debtor under the Plan and the payments, contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan, each Person or Entity that has held, currently holds or may hold a Claim, and any Affiliate of any such Person or Entity (as well as any trustee or agent on behalf of each such Person or Entity), shall be deemed to have forever waived, released and discharged the Debtor, its Estate, its Property, and the Distribution Agent from any and all Claims, obligations, suits, judgments, damages, rights, Causes of Action and liabilities whatsoever (other than the right to enforce the performance of the respective obligations of the Debtor or the Distribution Agent under the Plan, and the contracts, instruments, releases and other agreements delivered under the Plan), whether liquidated or unliquidated,**

- 28 -

**fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 Case, the Plan or the Disclosure Statement other than Claims or liabilities arising out of or relating to any act or omission that constitutes a failure to perform the duty to act in good faith and where such failure to perform constitutes willful misconduct, gross negligence, or fraud; provided, that this Section 10.03(b) shall not release any Person or Entity from any Claim or Cause of Action existing as of the Effective Date, based on (x) the Internal Revenue Code or any other domestic state, city or municipal tax code, (y) any liability that the Person or Entity may have as an owner or operator of real property after Confirmation under the environmental laws of the United States or any domestic state, city or municipality or (z) any criminal laws of the United States or any domestic state, city or municipality.    For the avoidance of doubt, neither the Indenture Trustee nor AME releases the Debtor or the Reorganized Debtor from the obligations, claims and rights arising under the Plan.**

(ii)    **Release of AME and Indenture Trustee.    Effective as of the Effective Date, and all provisions of the Plan notwithstanding other than with respect to any act  of gross negligence or willful misconduct, in consideration for the debtor-in-possession financing and the Carve Out that enables the Debtor to fund distributions under the Plan, each Person and Entity that has held, currently holds or may hold a Claim, and any Affiliate of any such Person or Entity (as well as any trustee or agent on behalf of each such Person or Entity), shall be deemed to have forever waived, released and discharged AME and the Indenture Trustee, their affiliates, agents and other representatives, from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities, whether for tort, contract, violations of federal or state securities laws, or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence, including actions in connection with indebtedness for money borrowed by the Debtor, taking place on or prior to the Effective Date in any way relating to the Debtor or its Estate.**

- 29 -

(c)      **Injunction.**

**All provisions of the Plan notwithstanding other than with respect to any act of gross negligence or willful misconduct, on the Effective Date, the Confirmation Order shall constitute an injunction permanently enjoining any Entity (excluding the Debtor) that has held, currently holds or may hold a Claim, demand, debt, right, Cause of Action or liability that is released pursuant to this Section 10.03 of the Plan from enforcing or attempting to enforce any such Claim, demand, debt, right, Cause of Action or liability against (1) the Debtor, (2) the Committee, (3) the Distribution Agent, (4) any member, trustee, officer, employee, agent, advisor, professional, representative or other person acting on behalf of the foregoing (1) through (3), or (5) any of the respective Property of any of the foregoing. In consideration for the debtor-in-possession financing, Carve Out and release of certain liens and rights pursuant to which AME enabled the Debtor to fund distributions pursuant to the Plan, the Confirmation Order shall constitute an injunction permanently enjoining any Person or Entity that has held, currently holds or may hold a Claim, demand, debt, right, Cause of Action or liability that is released pursuant to this Section 10.03 of the Plan from enforcing or attempting to enforce any such Claim, demand, debt, right, Cause of Action of liability against AME, the Indenture Trustee, their affiliates, agents, advisors, professionals and other representatives.**

Section 10.04.      Term of Injunctions or Stays

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case under sections 105(a) or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

Section 10.05.      Preservation of Clark Atlanta University Interests

The Debtor acknowledges that Clark Atlanta University asserts a reversionary interest in certain parcels of the Debtor's campus. This reversionary interest shall survive this Chapter 11 Case unaltered and Clark Atlanta University shall retain all of its rights and remedies relating to its alleged reversionary interest to the same extent and with the same validity and effect as existed on the Petition Date.

Section 10.06.      Preservation of Insurance

Except as necessary to be consistent with the Plan, the Plan and the discharge provided herein shall not diminish or impair: (a) the enforceability of insurance policies that may cover Claims against the Debtor or any other Person or Entity; or (b) the continuation of workers' compensation programs in effect, including self-insurance programs.

Section 10.07.      Subordination Rights

Any distributions under the Plan shall be received and retained free of and from any obligations to hold or transfer the same to any other Creditor, and shall not be subject to levy, garnishment, attachment or other legal process by any Holder by reason of claimed contractual subordination rights, which rights shall be waived and the Confirmation Order shall

constitute an injunction enjoining any Person from enforcing or attempting to enforce any contractual, legal or equitable subordination rights to Property distributed under the Plan, in each case other than as provided in the Plan.

<div align="center">Section 10.08.      <u>No Successor Liability</u></div>

Except as otherwise expressly provided in the Plan, the Debtor and the Distribution Agent do not, pursuant to the Plan or otherwise, assume, agree to perform, pay, or indemnify or otherwise have any responsibilities for any liabilities or obligations of the Debtor or any other party relating to or arising out of the operations of or assets of the Debtor, whether arising prior to, on, or after the Effective Date. The Distribution Agent is not, and shall not be, successors to the Debtor by reason of any theory of law or equity, and shall not have any successor or transferee liability of any kind or character.

<div align="center"># ARTICLE XI.
## RETENTION OF JURISDICTION</div>

<div align="center">Section 11.01.      <u>Exclusive Jurisdiction of Bankruptcy Court</u></div>

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain after the Effective Date exclusive jurisdiction of all matters arising out of, arising in or related to the Chapter 11 Case to the fullest extent permitted by applicable law, including, without limitation, jurisdiction to:

(a)      issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

(b)      hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(c)      hear and determine any motions, applications, adversary proceedings, contested matters and other litigated matters pending on, filed or commenced after the Effective Date that may be commenced by the Debtor or the Distribution Agent thereafter.

<div align="center"># ARTICLE XII.
## MISCELLANEOUS PROVISIONS</div>

<div align="center">Section 12.01.      <u>Binding Effect of Plan</u></div>

The provisions of the Plan shall be binding upon and inure to the benefit of the Debtor, the Estate, the Distribution Agent, any Holder of any Claim treated herein or any Person named or referred to in the Plan, and each of their respective heirs, executors, administrators, representatives, predecessors, successors, assigns, agents, officers and directors, trustees and, to the fullest extent permitted under the Bankruptcy Code and other applicable law, each other Person affected by the Plan.

<div align="center">Section 12.02.      <u>Business Days</u></div>

<div align="center">- 31 -</div>

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

Section 12.03.    <u>Severability</u>

Should the Bankruptcy Court determine, prior to the Confirmation Date, that any provision of the Plan is either illegal on its face or illegal as applied to any Claim, such provision shall be unenforceable as to all Holders of Claims or to the specific Holder of such Claim, as the case may be, as to which such provision is illegal.    Unless otherwise determined by the Bankruptcy Court, such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

Section 12.04.    <u>Governing Law</u>

EXCEPT TO THE EXTENT THAT THE BANKRUPTCY CODE OR BANKRUPTCY RULES OR OTHER FEDERAL LAWS ARE APPLICABLE, AND SUBJECT TO THE PROVISIONS OF ANY CONTRACT, INSTRUMENT, RELEASE, INDENTURE OR OTHER AGREEMENT OR DOCUMENT ENTERED INTO IN CONNECTION WITH THE PLAN, THE CONSTRUCTION, IMPLEMENTATION AND ENFORCEMENT OF THE PLAN AND ALL RIGHTS AND OBLIGATIONS ARISING UNDER THE PLAN SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF GEORGIA, WITHOUT GIVING EFFECT TO CONFLICTS-OF-LAW PRINCIPLES WHICH WOULD APPLY THE LAW OF A JURISDICTION OTHER THAN THE STATE OF GEORGIA.

Section 12.05.    <u>Post-Effective Date Status of the Committee</u>

The Committee shall continue in existence until the Effective Date, with the Debtor to pay the reasonable fees and expenses of the Committee and its professionals through the Effective Date.  The Committee shall have standing to participate in proceedings brought by its respective professionals or, if applicable, members, for allowance of fees and/or reimbursement of expenses as permitted by law.  Except as provided in this Section 12.07 or above, the Committee shall be dissolved on the Effective Date, and the members, attorneys, accountants, and other professionals thereof shall be released and discharged of and from all further authority, duties, responsibilities, liabilities, and obligations related to, or arising from, the Chapter 11 Case, the Plan, or its implementation.

Section 12.06.    <u>Oversight Committee</u>

Within ten (10) days prior to the Confirmation Date, the Committee shall select two (2) members of the Committee to serve as the Oversight Committee.  From and after the Effective Date, the Reorganized Debtor shall consult with the Oversight Committee on all matters related to Claim Objections (including whether to bring, withdraw or settle same), treatment of executory contracts and distribution of Distributable Cash from the Distribution Account.  The Oversight Committee shall have standing to be heard on any matter related to the foregoing, including making Claim Objections should the Debtor or Reorganized Debtor decline

- 32 -

to do so without good faith basis as shall be determined by the Bankruptcy Court. The Oversight Committee shall be entitled to retain counsel (which counsel may be, but is not required to be, current counsel to the Committee), and other professionals as necessary in order to assist the Oversight Committee in carrying out its duties.

Section 12.07.    Payment of Statutory Fees

All U.S. Trustee's Fee Claims, as determined, if necessary, by the Bankruptcy Court at the hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid on or before the Effective Date by the Debtor.

Section 12.08.    Post-Confirmation Operating Reports

To the extent required, the Debtor shall file quarterly operating reports and pay all fees as required by the United States Trustee until such time as a Final Decree or other order is entered under section 350(a) of the Bankruptcy Code closing the Bankruptcy Cases.

Section 12.09.    Notices

Any notice required or permitted to be provided under this Plan to the Debtor, or any request for information with respect to the Plan, shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight delivery service, freight prepaid, to be addressed as follows:

> Morris Brown College
> 643  Martin Luther King, Jr. Dr.
> Atlanta, GA  30314
> Attn:  Dr. Stanley Pritchett
> Email: Stanley.pritchett@morrisbrown.edu

> With copies to:

> Dilworth Paxson LLP
> 1500 Market Street
> Suite 3500E
> Philadelphia, PA 19102
> Attn.:  Anne M. Aaronson
> Email:  aaaronson@dilworthlaw.com

> And

> The Moore Law Group, LLC
> 1745 Martin Luther King Jr., Dr.
> Atlanta, GA 30314
> Attn: John Moore
> Email: jmoore@moorelawllc.com

Section 12.10.    Section 1146 Exemption

- 33 -

117249682_9

To the fullest extent permitted under section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any security under the Plan, if any, or the execution, delivery or recording of an instrument of transfer under the Plan, or the revesting, transfer or sale of any real or other Property of or to the Debtor or the Distribution Agent, shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage recording tax, intangible tax or similar tax.

Section 12.11.     Continued Confidentiality Obligations

Pursuant to the terms thereof, members of and advisors to any Committee, any other Holder of a Claim, and their respective predecessors, successors and assigns shall continue to be obligated and bound by the terms of any confidentiality agreement executed by them in connection with this Chapter 11 Case or the Debtor, to the extent that such agreement, by its terms, may continue in effect after the Confirmation Date.

Section 12.12.     No Admissions or Waivers

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission or waiver by the Debtor with respect to any matter set forth herein, including, without limitation, liability on any Claim or the propriety of any classification of any Claim.

Section 12.13.     Entire Agreement

The Plan (and all Exhibits to the Plan and any Plan supplements that may be filed) sets forth the entire agreement and undertakings relating to the subject matter hereof and supersedes all prior discussions and documents. The Debtor shall not be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

Section 12.14.     Bar Date for Professionals

Applications for compensation for services rendered and reimbursement of expenses incurred by Professionals from the Petition Date through the Effective Date shall be filed no later than forty-five (45) days after the Effective Date. Such applications shall be served on:

(a)     the Debtor;

(b)     Anne M. Aaronson, Dilworth Paxson LLP, 1500 Market Street, Suite 3500E, Philadelphia, PA 19102, lead counsel to the Debtor;

117249682_9

(c)    John Moore, The Moore Law Group, LLC, 1745 Martin Luther King Jr., Dr., Atlanta, GA 30314, local counsel to the Debtor

(d)    the Office of the United States Trustee; and

(e)    Matthew Levin, Kilpatrick Townsend & Stockton LLP Suite 2800, 1100 Peachtree Street NE, Atlanta, GA 30309-4528, counsel to the Committee.

Applications that are not timely filed will not be considered by the Court. The Debtor or the Distribution Agent may pay any Professional Fees and expenses incurred after the Effective Date without any application to the Bankruptcy Court. The Plan Proponent hereby requests Confirmation of the Plan pursuant to section 1129(a) or section 1129(b) of the Bankruptcy Code.

Dated:    December 21, 2014          **MORRIS BROWN COLLEGE**

By:    _____
Name:    Dr. Stanley J. Pritchett, Sr.
Title:    President
Morris Brown College

**Schedule 6.02(a)**

| Non-Debtor Party | Contract/Lease | Term | Cure/Status |
|------------------|----------------|------|-------------|
| None | | | |