MORRIS BROWN COLLEGE
643 Martin Luther King, Jr. Dr. NW
Atlanta, GA 30314

December 21, 2014

Ladies and Gentlemen:

      This letter agreement (the "<u>Agreement</u>") sets forth certain terms and conditions pursuant to which the estate of Morris Brown College (the "<u>Debtor</u>") will be reorganized as agreed by and among the Debtor, The African Methodist Episcopal Church, Inc. ("<u>AME</u>"), U.S. Bank, National Association, as Indenture Trustee (the "<u>Indenture Trustee</u>") and the Official Committee of Unsecured Creditors (the "<u>Committee</u>").  Pursuant to the terms of this Agreement, AME and the Indenture Trustee agree to support the Debtor's second amended chapter 11 plan of reorganization (the "<u>Plan</u>") and supporting Disclosure Statement (the "<u>Disclosure Statement</u>"), which will be filed on or before January 31, 2015.

      1.      <u>Plan of Reorganization</u>

      The Debtor commenced a case (the "<u>Chapter 11 Case</u>") under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Northern District of Georgia (the "<u>Bankruptcy Court</u>") on August 25, 2012.  As part of the Chapter 11 Case, the Debtor filed a plan of reorganization on June 27, 2013.  On October 6, 2013, the Debtor filed its amended plan of reorganization.

      Neither of these plans could be pursued to confirmation due to the failure of the sale transaction underlying each version of the plan.  Accordingly, the Plan is being further amended by the Debtor following the completion of a sale transaction pursuant to 11 U.S.C. § 363(b) to provide what the Debtor believes to be the best possible recovery for all creditors.  The Debtor intends to seek entry of an Order confirming the Plan which is not inconsistent with this Agreement (the "<u>Confirmation Order</u>").

      To most efficiently and economically provide a process through which the Plan may proceed through the confirmation process in a manner that best preserves the value of the estate for all creditors and minimizes costs associated with litigation and other issues amongst the Debtor and its senior secured creditors, the Debtor, the Committee, the Indenture Trustee, and AME are entering into this Agreement.  AME and the Indenture Trustee have determined it is in their collective best interests to support the Plan and related Disclosure Statement, so long as the Plan and Disclosure Statement are not inconsistent with this Agreement.

      The parties hereto intend that confirmation of the Plan occur prior to March 31, 2015, but understand that the ability to achieve this result will be dependent upon, among other things, the availability of the United States Bankruptcy Court.

117616096_12

2. <u>Due Authority</u>

The Committee, the Indenture Trustee and AME respectively represent and warrant to the Debtor that, as of the date hereof such party has full power and authority to enter into this Agreement.

3. <u>Support for a Plan</u>

Subject to the terms and conditions hereof and for so long as its obligations hereunder have not terminated as provided herein, each of the Committee, Indenture Trustee and AME, and, in the case of the following clauses (a), (b), (c), and (d), their respective agents, affiliates, trustees, predecessors, successor and assigns, (a) shall support and take all reasonable actions to facilitate the solicitation, confirmation and consummation of the Plan, in the form to be filed on or about December 21, 2014, as may be amended with the consent of the Committee, AME and the Indenture Trustee, and provided that the members of the Committee, AME and the Indenture Trustee have been properly solicited pursuant to Bankruptcy Code sections 1125 and 1126, (b) will not object to confirmation of, or vote its Claims to reject, the Plan or otherwise take any action or commence any proceeding to oppose or to seek any modification of the Plan or the Disclosure Statement, or any other documents containing terms and conditions consistent in all material respects with the Plan and this Agreement, (c) will not directly or indirectly seek, solicit, support, encourage, consent to, or participate in the negotiation or formulation of (i) any plan of reorganization or liquidation, proposal, offer, dissolution, winding up, liquidation, reorganization, merger, consolidation, business combination, joint venture, partnership, sale of assets or restructuring for the Debtor (each, an "<u>Alternative Proposal</u>") other than the Plan or (ii) any other action that is inconsistent with, or that would delay or obstruct the proposal, solicitation, confirmation, or consummation of, the Plan, and (d) shall take such other actions as may be reasonably necessary to facilitate confirmation and consummation of the Plan.

4. <u>AME's Covenants</u>

As long as a Termination Event (as defined below) has not occurred, or has occurred but has been duly waived in accordance with the terms hereof, AME, subject to Section 7(b) herein, shall use its commercially reasonable efforts to:

(a) Support the filing and confirmation of the Plan and Disclosure Statement that includes: (i) a distribution on account of any and all claims asserted by AME and/or the Indenture Trustee or anyone acting on their behalf, including their respective agents, affiliates, trustees, predecessors, successors and assigns, of whatever kind, character or nature to AME or the Indenture Trustee (in the sole discretion of AME) of $10,500,000, under the terms of the Plan filed simultaneously herewith, which total distribution shall come from, and only from, the proceeds of the sale transaction conducted pursuant to 11 U.S.C. § 363(b), which distribution shall be indefeasible (including with respect to the $2,100,000 portion of the $10,500,000 that is being paid, upon approval by the Bankruptcy Court, to the Indenture Trustee to be administered pursuant to the Indenture as set forth in the Stipulated Order Authorizing Debtor To Use Cash Collateral and Granting Adequate Protection To The African Methodist Episcopal Church, Inc. and the Indenture Trustee) and not subject to avoidance, offset, recoupment, credit or reduction in any way, with the remainder of the proceeds being distributed to satisfy the claims of creditors

117616096_12

other than AME and/or the Indenture Trustee or anyone acting on their behalf, including their respective agents, affiliates, trustees, predecessors, successors and assigns; (ii) a retention of AME's secured position in the portion of the Debtor's property that was not sold pursuant to 11 U.S.C. § 363(b) as set forth in paragraph 7(a)(iii) below; and (iii) provides for the unconditional release of all claims, if any, held by the Debtor or its bankruptcy estate against AME, the Indenture Trustee and the Committee, and each of their respective representatives, agents, employees and professionals.  Notwithstanding the foregoing, nothing herein shall impair or otherwise have an effect on AME's and the Indenture Trustee's continuing interest in the property following the sale transaction conducted pursuant to 11 U.S.C. § 363(b), which will be retained to the same extent and validity as existed prior to the execution of this Agreement. Further, to the extent that the Bankruptcy Court does not approve the Stipulated Order Authorizing Debtor To Use Cash Collateral and Granting Adequate Protection To The African Methodist Episcopal Church, Inc. and the Indenture Trustee (the "<u>Stipulated Order</u>") and payments under the Stipulated Order are not made, including the $2,100,000 distributed to the Indenture Trustee as set forth therein, on or before thirty days prior to the deadline by which objections to the Plan must be filed, the parties hereto acknowledge and agree that the payment of $2,100,000 as set forth in the Stipulated Order will be included and distributed out of the $10,500,000 distributable to Class 2 pursuant to the Plan on or before the effective date of the Plan; and

(b) take no action (directly or indirectly) that is inconsistent with, or that would delay or otherwise impede approval of the Disclosure Statement or the Plan or the expeditious confirmation and consummation of the Plan, so long as the terms of the Plan, the Confirmation Order and Disclosure Statement are consistent with this Agreement.

5. <u>The Indenture Trustee's Covenants</u>

As long as a Termination Event (as defined below) has not occurred, or has occurred but has been duly waived in accordance with the terms hereof, the Indenture Trustee, subject to Section 7(b) herein, shall use its commercially reasonable efforts to:

(a) Support the filing and confirmation of the Plan and Disclosure Statement that includes: (i) a distribution on account of any and all claims asserted by AME and/or the Indenture Trustee or anyone acting on their behalf, including their respective agents, affiliates, trustees, predecessors, successors and assigns, of whatever kind, character or nature to AME or the Indenture Trustee (in the sole discretion of AME) of $10,500,000, under the terms of the Plan filed simultaneously herewith, which total distribution shall come from, and only from, the proceeds of the sale transaction conducted pursuant to 11 U.S.C. § 363(b), which distribution shall be indefeasible (including with respect to the $2,100,000 portion of the $10,500,000 that is being paid, upon approval of the Bankruptcy Court, as set forth in the Stipulated Order or, in the event that the Stipulated Order is not approved, as part of the $10,500,000 distributed to Class 2 pursuant to the Plan) and not subject to avoidance, offset, recoupment, credit or reduction in any way, with the remainder of the proceeds being distributed to satisfy the claims of creditors other than AME and/or the Indenture Trustee or anyone acting on their behalf, including their respective agents, affiliates, trustees, predecessors, successors and assigns; (ii) a retention of AME's and the Indenture Trustee's secured position in the portion of the Debtor's property that was not sold pursuant to 11 U.S.C. § 363(b) as set forth in paragraph 7(a)(iii) below; and (iii)

117616096_12

provides for the unconditional release of all claims, if any, held by the Debtor or its bankruptcy estate against AME, the Indenture Trustee, and the Committee, and each of their respective representatives, agents, employees or professionals. Notwithstanding the foregoing, nothing herein shall impair or otherwise have an effect on AME's and the Indenture Trustee's continuing interest in the property following the sale transaction conducted pursuant to 11 U.S.C. § 363(b), which will be retained to the same extent and validity as existed prior to the execution of this Agreement; and

(b) take no action (directly or indirectly) that is inconsistent with, or that would delay or otherwise impede approval of the Disclosure Statement or the Plan or the expeditious confirmation and consummation of the Plan, so long as the terms of the Plan, the Confirmation Order and Disclosure Statement are consistent with this Agreement.

6. <u>The Committee's Covenants</u>

As long as a Termination Event (as defined below) has not occurred, or has occurred but has been duly waived in accordance with the terms hereof, the Committee, subject to Section 7(b) herein, shall use its commercially reasonable efforts to:

(a) Support the filing and confirmation of the Plan and Disclosure Statement that includes: (i) a distribution on account of any and all claims asserted by AME and/or the Indenture Trustee or anyone acting on their behalf, including their respective agents, affiliates, trustees, predecessors, successors and assigns, of whatever kind, character or nature to AME or the Indenture Trustee (in the sole discretion of AME) of $10,500,000, under the terms of the Plan filed simultaneously herewith, which total distribution shall come from, and only from, the proceeds of the sale transaction conducted pursuant to 11 U.S.C. § 363(b), which distribution shall be indefeasible (including with respect to the $2,100,000 portion of the $10,500,000 that is being paid, upon approval by the Bankruptcy Court, to the Indenture Trustee to be administered pursuant to the Indenture as set forth in the Stipulated Order) and not subject to avoidance, offset, recoupment, credit or reduction in any way, with the remainder of the proceeds being distributed to satisfy the claims of creditors other than AME and/or the Indenture Trustee or anyone acting on their behalf, including their respective agents, affiliates, trustees, predecessors, successors and assigns; (ii) a retention of AME's and the Indenture Trustee's secured position in the portion of the Debtor's property that was not sold pursuant to 11 U.S.C. § 363(b) as set forth in paragraph 7(a)(iii) below; and (iii) provides for the unconditional release of all claims, if any, held by the Debtor or its bankruptcy estate against AME, the Indenture Trustee, and the Committee, and each of their respective representatives, agents, employees or professionals; and

(b) Take no action (directly or indirectly) that is inconsistent with, or that would delay or otherwise impede approval of the Disclosure Statement or the Plan or the expeditious confirmation and consummation of the Plan, so long as the terms of the Plan, the Confirmation Order and the Disclosure Statement are consistent with this Agreement.

7. <u>Termination of Obligations</u>

(a) The obligations of the Committee, AME and the Indenture Trustee under this Agreement shall immediately terminate and be of no further force and effect on the date that is

117616096_12

three business days following the occurrence of any of the events listed below (each, a "Termination Event") unless, no later than three business days following the Termination Event, the occurrence of such Termination Event is waived by the Committee, AME and the Indenture Trustee:

    (i)    the Plan and the Disclosure Statement shall not have been filed by January 31, 2015;

    (ii)    the Disclosure Statement shall not have been approved by the Bankruptcy Court by March 31, 2015;

    (iii)    the Plan that is filed fails to provide for the retention of AME's and the Indenture Trustee's secured position in the portion of the Debtor's property that was not sold pursuant to 11 U.S.C. § 363(b) by including the following language:

> Notwithstanding anything to the contrary herein, in addition to the cash distribution to AME provided under the Plan, AME and the Indenture Trustee will retain their security interest in the campus property that was not sold pursuant to 11 U.S.C. § 363(b), unaffected by the Debtor's bankruptcy case. This "carried interest" shall be in the amount of $3,500,000 and shall secure a portion of the Debtor's remaining obligation to AME. The obligation shall be further evidenced by a Secured Promissory Note that provides that no principal or interest will become due until the earlier of 2.5 years post-emergence or 6 months following accreditation (the "Forbearance Period"). Unless voluntarily paid earlier by the Debtor, payment of interest that accrues during the Forbearance Period ("Accrued Interest") shall commence on the 1st day of the month following the end of the Forbearance Period (the "First Interest Payment Date"). The portion of interest that represents Accrued Interest shall be amortized over a period commencing with the First Interest Payment Date and ending 120 months after the date the note is executed and delivered (the "Maturity Date") of the Note. Interest will accrue at the federal judgment rate of interest or 7.375% per annum, whichever is higher.

> The Debtor shall, beginning no later than the earlier of 2.5 years post-emergence or 6 months following accreditation, begin making an annual payment to AME equal to 25% of the Debtor's excess revenues over expenditures for each year until such time as amounts due under the Secured Promissory Note are repaid in full.

> Alternatively, the Debtor may pay off the Secured Promissory Note by:

117616096_12

(a) within thirty six months of the effective date of the Plan, paying a lump sum of $1,000,000 or the then outstanding amount due under the Secured Promissory Note (whichever is less), or

(b) within thirty six months of the effective date of the Plan selling the property securing the Secured Promissory Note, and providing AME with 50% of the net proceeds of such sale, after deducting costs of sale, surveys, broker fee, litigation and other costs, provided that the total payment is equal to or greater than $1,000,000 or the then outstanding balance due under the Secured Promissory Note (whichever is less), or

(c) within sixty months of the effective date of the Plan, paying a lump sum of $1,750,000, or the then outstanding balance due under the Secured Promissory Note (whichever is less), or

(d) within sixty months of the effective date of the Plan, selling the property securing the Secured Promissory Note, and providing AME with 50% of the net proceeds of such sale after deducting costs of sale, surveys, broker fee, litigation and other costs, provided that the total payment is equal to or greater than $1,750,000 or the then outstanding balance due under the Secured Promissory Note (whichever is less).

(iv)   the Bankruptcy Court shall not have entered the Confirmation Order consistent with the terms of the Plan, including the releases and injunction set forth therein by April 30, 2015;

(v)   the Plan shall not have become effective by June 30, 2015;

(vi)   the Chapter 11 Case is dismissed or converted to a case under Chapter 7 of the Bankruptcy Code;

(vii)   the appointment of a Chapter 11 trustee or an examiner having enlarged powers relating to the operation of the business of the Debtor (beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code or under Section 1106(b) of the Bankruptcy Code;

(viii)   the Debtor (or any other party on behalf of the Debtor's bankruptcy estate) or the Committee commences any adversary proceeding or lawsuit against AME or the Indenture Trustee, or objects to any of AME's or the Indenture Trustee's claims in the Chapter 11 Case (unless such objection is to claims inconsistent with the terms of this Agreement);

(ix)   a Confirmation Order is reversed on appeal, vacated or modified so as to be inconsistent with this Agreement.

117616096_12

(b) Upon termination of this Agreement, the Committee, AME and the Indenture Trustee shall be released from their respective commitments, undertakings and agreements under or related to this Agreement and shall have the rights and remedies that they would have had and shall be entitled to take all actions that they would have been entitled to take had they not entered into this Agreement.  Upon the occurrence of any termination of this Agreement any and all votes delivered by AME and/or the Indenture Trustee prior to such termination shall be deemed, for all purposes, to be null and void from the first instance and shall not be considered or otherwise used in any manner by the Debtor.  Upon the occurrence of any termination of this Agreement, (i) which is caused by AME's and/or the Indenture Trustee's breach of one or more covenants set forth in Section 4 or 5 above, any and all releases of AME and/or the Indenture Trustee by the Debtor or the Debtor's estate contained in any order of the Bankruptcy Court, including, but not limited to, any releases (relating to any claims or obligations other than the actual debtor-in-possession financing itself) effectuated by a final order entered by the Bankruptcy Court with respect to any debtor-in-possession financing provided by AME or any of its affiliates, shall be deemed to be null and void from the first instance and shall not be considered or otherwise used in any manner by AME and/or the Indenture Trustee, or (ii) which is caused by the Committee's breach of one or more covenants set forth in Section 6 above, any and all releases of AME and/or the Indenture Trustee by the Debtor or the Debtor's estate contained in any order of the Bankruptcy Court, including, but not limited to, any releases (relating to any claims or obligations other than the actual debtor-in-possession financing itself) effectuated by a final order entered by the Bankruptcy Court with respect to any debtor-in-possession financing provided by AME or any of its affiliates, shall remain in full force and effect.

8. <u>Prior Negotiations</u>

This Agreement and the Stipulation and Stipulated Order Authorizing Debtor To Use Cash Collateral and Granting Adequate Protection To The African Methodist Episcopal Church, Inc. and the Indenture Trustee supersede all prior negotiations, and documents reflecting such prior negotiations, between and among the parties hereto (and their respective advisors), with respect to the subject matter thereof.

9. <u>Amendments</u>

No amendment, modification, waiver or other supplement of the terms of this Agreement or the Plan or Disclosure Statement shall be valid unless such amendment, modification, waiver or other supplement is in writing and has been signed or agreed upon by the an authorized representative of each party hereto.

For the purposes hereof, immaterial changes to the Plan or Disclosure Statement shall not constitute a modification or amendment thereof or of this Agreement.

10. <u>Independent Analysis</u>

Each party to this Agreement hereby confirms that it has made its own decision to execute this Agreement based upon its own independent assessment of documents and information available to it, as it deemed appropriate.

117616096_12

11. <u>Governing Law</u>

This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of Georgia. By its execution and delivery of this Agreement, each of the parties hereto hereby irrevocably and unconditionally agrees for itself that any legal action, suit or proceeding against it with respect to any matter under or arising out of or in connection with this Agreement or for recognition or enforcement of any judgment rendered in any such action, suit or proceeding, shall be brought exclusively in the Bankruptcy Court. By execution and delivery of this Agreement, each of the parties hereto hereby irrevocably accepts and submits itself to the exclusive jurisdiction of such court, generally and unconditionally, with respect to any such action, suit or proceeding.

12. <u>Effective Date</u>

This Agreement shall become effective when the Debtor has received counterparts hereof duly executed and delivered by the Committee, the Indenture Trustee and AME (the "<u>Effective Date</u>").

Upon the Effective Date, this Agreement shall be deemed effective and it, as well as the proposed Plan and Disclosure Statement, thereafter may only be amended, modified, waived or otherwise supplemented as set forth in Section 9 above.

13. <u>Third-Party Beneficiary</u>

This Agreement is intended for the benefit of the parties hereto and no other person shall have any rights hereunder.

14. <u>Counterparts</u>

This Agreement may be executed in several counterparts, each of which shall be deemed to be an original, and all of which together shall be deemed to be one and the same agreement. Execution copies of this Agreement may be delivered by facsimile or other electronic format, which shall be deemed to be an original for the purposes of this paragraph.

15. <u>Headings</u>

The section headings of this Agreement are for convenience of reference only and shall not, for any purpose, be deemed a part of this Agreement.

16. <u>Acknowledgment</u>

This Agreement is not and shall not be deemed to be a solicitation of consents to the Plan and is entered into solely for the purpose of setting forth certain terms that, if included in the Plan, provide a Plan that is acceptable to the parties hereto. The acceptance of the Plan by AME and the Indenture Trustee will not be solicited until AME and the Indenture Trustee, as well as other creditors and parties in interest, have received the Disclosure Statement and related ballot, as approved by the Bankruptcy Court.

117616096_12

17. <u>Settlement Discussions</u>

This Agreement is part of a proposed settlement of matters that could otherwise be the subject of litigation among the parties hereto. Nothing herein shall be deemed an admission of any kind. Pursuant to Federal Rule of Evidence 408 and any applicable state rules of evidence, this Agreement and all negotiations relating thereto shall not be admissible into evidence in any proceeding other than a proceeding to enforce the terms of this Agreement.

18. <u>No Waiver of Participation and Preservation of Rights</u>

Except as expressly provided in this Agreement, nothing herein is intended to, does or shall be deemed in any manner to waive, limit, impair or restrict the ability of the Committee, AME or the Indenture Trustee to protect and preserve their respective rights, remedies and interests, including, but not limited to, claims against the Debtor, any liens or security interests they may have in any assets of the Debtor, or their full participation in the Chapter 11 Case. Without limiting the foregoing sentence in any way, if the transactions contemplated by this Agreement or otherwise set forth in the Plan are not consummated as provided herein, if a Termination Event occurs, or if this Agreement is otherwise terminated for any reason, the parties hereto each fully reserve any and all of their respective rights, remedies and interest.

19. <u>Successors and Assigns</u>

This Agreement shall be binding upon the respective successors and assigns of the parties to the Agreement.

117616096_12

   IN WITNESS WHEREOF, the Parties have each caused this Agreement to be executed as of the day and year first above written.

               MORRIS BROWN COLLEGE

               By: /s/ Anne M. Aaronson

               Name: Anne M. Aaronson, Esq.
                   Dilworth Paxson LLP

               Its: Lead Bankruptcy Counsel

**ACKNOWLEDGED AND AGREED:**

THE AFRICAN METHODIST EPISCOPAL CHURCH, INC.

By: /s/ Douglas Selby

Name: Douglas Selby, Esq.
    Hunton & Williams LLP

Its: Lead Bankruptcy Counsel

U.S. BANK, NATIONAL ASSOCIATION, as Trustee

By:

Name:

Its:

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By: /s/ Matthew W. Levin

Name: Matthew W. Levin, Esq.
    Kilpatrick Townsend & Stockton LLP

Its: Lead Bankruptcy Counsel

117616096_12